# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33095

JENNIE RAMOS, individually and as natural parent and guardian of Daniel Ramos and Robert Ramos, minor children,

      Plaintiff-Appellant,

v.

GORDON DIXON, D.O. and JEANNINE T. WALTERS, D.O.,

      Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, March 2007 Term

2007 Opinion No. 46

Filed: March 28, 2007

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Bingham County. The Hon. Jon J. Shindurling, District Judge.

The judgment of the district court is affirmed.

Cox, Ohman & Brandstetter, Idaho Falls, for appellant. John M. Ohman argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for respondent Dixon. Gary T. Dance argued.

Hall, Farley, Oberrecht & Blanton, P.A., Boise, for respondent Walters. John J. Burke argued.

---

EISMANN, Justice.

This is an appeal from a judgment in favor of the Defendants in a medical malpractice case entered after granting summary judgment on the ground that the opinion of the Plaintiff's expert was inadmissible because of the lack of foundation showing that the expert had knowledge of the applicable local standard of care. We affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

In September 1998, a cardiologist in Idaho Falls diagnosed Rene Ramos with a left ventricular hypertrophy with an intraventricular gradient, which condition placed Ramos at increased risk for death due to arrhythmia. The cardiologist prescribed the beta-blocker Toprol XL and a single aspirin per day.

On May 6, 2003, Ramos saw his primary care physician Dr. Gordon Dixon, a general practitioner in Blackfoot, Idaho. Ramos complained of a raspy voice, stomach reflux at night, fatigue, and low energy. Dr. Dixon attributed the fatigue to the Toprol XL. He took Ramos off that medication and placed him on Diovan HCT, an angiotensin receptor blocker and diuretic.

On May 13, 2003, Ramos returned to Dr. Dixon, complaining that he had fainted after standing up from a seated position. After examining Ramos, Dr. Dixon scheduled him for a brain MRI and referred him to his cardiologist.

Ramos saw his cardiologist on May 15, 2003. The cardiologist took Ramos off the Diovan HCT and prescribed Cardizem I, a calcium channel blocker. He also recommended that Ramos have another echocardiogram.

On May 16, 2003, Ramos went to the emergency room at the Bingham Memorial Hospital in Blackfoot, complaining of dizziness and blacking out after getting up off his bed. Dr. Jeannine Walters examined him in the emergency room. She determined that his loss of consciousness was not cardiac related and discharged him. Approximately ten hours later an ambulance brought Ramos back to the emergency room. He was in cardiac arrest, and efforts to resuscitate him failed. He died the same day.

On October 7, 2004, Jennie Ramos (Plaintiff) commenced this action seeking to recover damages for her husband's death, both on her behalf and on behalf of their minor children. She retained Dr. Richter, a cardiologist from New Jersey, as her medical expert. In an attempt to familiarize himself with the local standard of care, Dr. Richter talked with Dr. Shawn Speirs, a family practitioner in Idaho Falls.

On February 17, 2006, Dr. Dixon moved for summary judgment. One of the grounds for the motion was that the Plaintiff had failed to show that Dr. Richter had actual knowledge of the applicable standard of care. On February 23, 2006, Dr. Walters joined in the motion for summary judgment. Plaintiff objected on the ground that the timing of both motions violated the district court's scheduling order entered on February 3, 2005. That order set the trial to

commence on March 18, 2006, and required that motions for summary judgment be filed at least sixty days before trial. The district court had entered an amended scheduling order on February 10, 2005, which rescheduled the trial to April 18, 2006. Under the amended order, Dr. Dixon's motion for summary judgment was timely and Dr. Walters's motion was not. On March 6, 2006, Dr. Walters filed a motion in limine seeking to exclude the testimony of Dr. Richter on the ground that there was no showing that he had actual knowledge of the applicable standard of care. At the beginning of the hearing, Plaintiff's attorney stated that the court should go forward with the hearing on the motion for summary judgment. The court stated that it would not have time to decide the motion for summary judgment before the pretrial conference scheduled on April 6. It vacated the trial date and rescheduled the trial to April 17, 2007. Counsel for the parties argued the motions, and the district court took them under advisement. On April 27, 2006, the court issued a written opinion and order granting the motions. On May 6, 2006, it entered a judgment dismissing the complaint with prejudice. The Plaintiff then timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in failing to address the untimeliness of Dr. Walters's motion for summary judgment?
2. Did the district court err in holding that Plaintiff had failed to show that her expert witness had actual knowledge of the applicable standard of care?

## III. ANALYSIS

**A. Did the District Court Err in Failing to Address the Untimeliness of Dr. Walters's Motion for Summary Judgment?**

The Plaintiff lists as the first issue on appeal, "Timeliness of Filing Motion for Summary Judgment?" In her argument she states, "Dr. Walters' filing of Joinder was filed fifty-five (55) days before trial and only twenty-five (25) days before the scheduled hearing of March 20, 2006, not the sixty days required by the Court Order or the twenty-eight (28) days required by IRCP 56(c). Respondent Walters acted in total derogation of the Court's Order and its rules of procedure, and should not have benefited thereby."

Dr. Dixon's motion for summary judgment and Dr. Walters's motion in limine were timely filed and set for hearing to be held on March 20, 2006. Only Dr. Walters's joinder in Dr. Dixon's motion for summary judgment was untimely. All three motions raised the identical issues. At the beginning of the hearing, Plaintiff's counsel stated that he had no objection to hearing the motions that day. He stated:

> May it please the court. From Plaintiff's standpoint, we think the critical issue is obviously the present challenge by the defendants to eliminate or avoid Dr. Richter's testimony. Our case does, in fact, rise and fall upon him as our expert witness. We think that motion should go forward today so the court can make an early determination, or at least as early as is convenient to His Honor.

Plaintiff's counsel then proceeded to argue the motions. The district court did not err in hearing Dr. Walters's motion for summary judgment.

**B. Did the District Court Err in Holding that Plaintiff Had Failed to Show that Her Expert Witness Had Actual Knowledge of the Applicable Standard of Care?**

"To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Dulaney v. St. Alphonsus Regional Medical Center*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002); I.C. § 6-1012. Rule 56(e) of the Idaho Rules of Civil Procedure imposes additional requirements regarding laying the foundation for the admission of expert testimony as to the applicable standard of care. As we stated in *Dulaney*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002) (citations omitted):

> The party offering such evidence must show that it is based upon the witness' personal knowledge and that it sets forth facts as would be admissible in evidence. The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his testimony. Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under Rule 56(e).

"This Court reviews challenges to the trial court's evidentiary rulings under the abuse of discretion standard." *Id*. at 163-64, 45 P.3d at 819-20. "[T]he court's ruling will not be overturned absent an abuse of that discretion." *Swallow v. Emergency Medicine of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003). When reviewing the trial court's exercise of that discretion, our inquiry is: (1) whether the trial court correctly perceived the issue as one of

4

discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Id.*

The applicable standard of health care is that practiced in "the community in which such care allegedly was or should have been provided." I.C. § 6-1012. The term "community" refers to "that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." *Id.* The alleged negligence in this case occurred in Blackfoot, and the nearest licensed general hospital is the Bingham Memorial Hospital in Blackfoot. The applicable standard of care is that practiced in the geographical area ordinarily served by that hospital.

In order for Plaintiff's out-of-state expert Dr. Richter to learn the applicable standard of care, Plaintiff's counsel had him contact Dr. Speirs, who practices in Idaho Falls about thirty miles from Blackfoot. Idaho Falls could be within the geographical area ordinarily served by the Bingham Memorial Hospital in Blackfoot. The existence of a licensed general hospital in Idaho Falls would not preclude Idaho Falls from being within that geographical area. Hospitals in nearby towns can certainly be in competition with each other. However, whether Idaho Falls is within the geographical area ordinarily served by the hospital in Blackfoot is a factual issue, and there is no evidence in the record on that issue. Plaintiff did not contend that Idaho Falls was within the geographical area ordinarily served by the Bingham Memorial Hospital. During oral argument before the district court, Plaintiff's counsel agreed that the applicable standard of care was that practiced in Blackfoot. He stated:

> And I did not mean to suggest, that that part of which I finished reading, that we believe that the law suggests the standard of care in Idaho is uniform. I recognize that which His Honor has said, that it must be specific to Blackfoot, Idaho. That's why our briefing focuses on the standard of care applicable to these defendants in Blackfoot, Idaho, at the time.

Dr. Richter testified in his deposition as follows regarding what he learned from Dr. Speirs:

> Q. What have you done to familiarize yourself with the standard of care for a family practice doctor practicing in 2003 in Blackfoot, Idaho?
> A. Mr. Ohman provided me with the name and phone number of a Dr. Sean Spears.
> Q. And where does he practice?

A. In Idaho Falls, Idaho. When I spoke with Dr. Speirs, my recollection is that he was a family practice doctor or a general internist who had also worked in Blackfoot, and stated that he had been in practice for several years and had experience evaluating patients in the emergency room, not necessarily as an emergency room physician, but seeing patients known to him or patients that were to be admitted to his service in the hospital.

We had about a 25-minute conversation, we discussed the basic facts of this case. I did not use any names, but I did mention the town that it occurred in.

And it was my impression after my discussion with Dr. Speirs that standard of care in Idaho is no different than it is anywhere else in the United States with regard to this case.

. . . .

Q. Did Dr. Speirs convey to you or do you know when it was that he started practicing in Idaho?

A. I do not remember those details, no.

. . . .

Q. And Dr. Speirs conveyed to you that he had not practiced as an emergency room physician, but had emergency room experience which he had obtained as a practicing internist and in the course of his training?

A. Correct.

Q. Did he say where that training had taken place?

A. I can't recall. I know he was from Idaho Falls, and he was aware that this had happened in Blackfoot. I believe he said that some of his experience had been in Blackfoot, as well as Idaho Falls.

Q. What was the nature of his experience in Blackfoot?

A. I can't remember.

Based upon Dr. Richter's deposition testimony, Dr. Dixon moved for summary judgment, arguing that there was no showing that Dr. Speirs had knowledge of the standard of care in Blackfoot as it existed in May 2003. In response, the Plaintiff submitted the affidavit of Dr. Speirs. With respect to the applicable standard of care, Dr. Speirs stated in his affidavit:

2. I am familiar with the standard of care applicable to family physicians and emergency room physicians in Blackfoot, Idaho, during May 2003.

. . . .

5. I advised him [Dr. Richter] that I was unaware of any deviations from the national standard of care, and that there was nothing peculiar or exceptional to the practice of family and emergency room medicine for physicians in Blackfoot, Idaho, when compared to physicians practicing elsewhere.

In his affidavit, Dr. Speirs did not provide any facts showing how he would be familiar with the standard of care in Blackfoot in May 2003. At the hearing, Plaintiff's counsel explained to the district court that he had nothing to do with Dr. Speirs's affidavit. He said he was out of

6

the country on a cruise when the affidavit was obtained and that his paralegal had prepared and obtained it. When the district court stated that Dr. Speirs said he knew the standard of care in Blackfoot but did not tell how he knew it, Plaintiff's counsel responded that he had never talked to Dr. Speirs and does not know what his experience and knowledge are. He asked for leave of Court "to let me confer with Dr. Speirs and learn from him directly what the total extent of his knowledge was. I am not personally acquainted with him. I cannot relate to you what that total experience is." He stated that he simply had Dr. Richter call Dr. Speirs and "made no attempt to intervene between the two." He added that Dr. Richter "satisfied himself that he knew what the standard of care was and that there were no deviations from it." The district court held that the Plaintiff had failed to lay an adequate foundation showing that Dr. Richter had acquainted himself with the applicable standard of care as it existed in Blackfoot in May 2003.

"An expert testifying as to the standard of care in medical malpractice actions must show that he or she is familiar with the standard of care for the particular health care professional for the relevant community and time." *Dulaney v. St. Alphonsus Regional Medical Center*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002). "The statute [I.C. § 6-1012] is both site and time specific." *Gubler v. Boe*, 120 Idaho 294, 296, 815 P.2d 1034, 1036 (1991). If the out-of-area expert consults with an Idaho physician to learn the applicable standard of care, there must be evidence showing that the Idaho physician knows the applicable standard of care. *Dulaney v. St. Alphonsus Regional Medical Center*, 137 Idaho 160, 45 P.3d 816 (2002) (the out-of-state expert's opinion lacked foundation where he had talked with a Boise physician practicing internal medicine but there was no showing that the Boise physician would know the standard of care for emergency room physicians in Boise). Here, there is no showing that Dr. Speirs would have knowledge of the standard of care in Blackfoot. Dr. Richter's testimony that he believed Dr. Speirs had stated during their conversation that some of his experience had been in Blackfoot is not sufficient. Not only did Dr. Richter not know the nature of that experience, but he did not know when it occurred. The district court did not abuse its discretion in sustaining the objection to the testimony of Dr. Richter. Absent such testimony, it did not err in granting summary judgment.

Plaintiff argues on appeal that it should not be her obligation to lay a foundation showing that Dr. Speirs had knowledge of the applicable standard of care in Blackfoot as it existed in May 2003. She contends that Dr. Speirs's conclusory allegation that he is "familiar with the standard

7

of care applicable to family physicians and emergency room physicians in Blackfoot, Idaho, during May 2003" should place upon the Defendants the burden of proving that Dr. Speirs did not have such knowledge. As we said in *Dulaney v. St. Alphonsus Regional Medical Center*, 137 Idaho 160, 163-64, 45 P.3d 816, 819-20 (2002) (citations omitted), "The liberal construction and reasonable inferences standard [applicable to summary judgment] does not apply . . . when deciding whether or not testimony offered in connection with a motion for summary judgment is admissible. . . . The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his testimony. Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under Rule 56(e)." The Plaintiff had the obligation to lay an adequate foundation for Dr. Richter's opinion.

What occurred in this case demonstrates an error too often made when trying to develop an adequate foundation for the opinion of a medical expert whose experience is outside the relevant community. Plaintiff's counsel simply put Dr. Richter in touch with Dr. Speirs and left it up to Dr. Richter to make a sufficient inquiry into the applicable standard of care. How an expert becomes familiar with that standard of care is a legal issue, not a medical issue. There is no reason to believe that Dr. Richter, a physician practicing in New Jersey, would be familiar with the requirements of Idaho Code §§ 6-1012 and 6-1013 and Rule 56(e) of the Idaho Rules of Civil Procedure. The attorney must be directly involved in advising the expert as to how to learn the applicable standard of care and in determining whether the expert has done so. It is not sufficient that the expert believes he or she has done so. The expert usually does not know how to lay an adequate foundation regarding the applicable standard of care. One method for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local physician who practices within the relevant community. Idaho Code § 6-1012 precludes assuming that the standard of care is uniform throughout Idaho. Therefore, merely putting the out-of-area expert in contact with an Idaho physician is not sufficient by itself. The Idaho physician must also have knowledge of the applicable standard of care. In this case, Plaintiff's counsel made no attempt to assist Dr. Richter in his inquiry into the applicable standard of care, nor did he make any attempt to determine whether Dr. Speirs had knowledge of the applicable standard of care in Blackfoot and, if so, how he gained that knowledge. Even after the Defendants' motions for summary judgment were granted, Plaintiff's counsel could have obtained another affidavit from Dr. Richter describing how he knows the applicable standard of

care, assuming that he does, and filed a timely motion for reconsideration of the order granting summary judgment. *See*, *Shane v. Blair*, 139 Idaho 126, 75 P.3d 180 (2003). As we stated in *J.I. Case Co. v. McDonald*, 76 Idaho 223, 229, 280 P.2d 1070, 1073 (1955), "[T]he chief virtue of a reconsideration is to obtain a full and complete presentation of all available facts, so that the truth may be ascertained, and justice done, as nearly as may be."

## IV. CONCLUSION

We affirm the judgment of the district court. We award costs on appeal to the respondents.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES **CONCUR**.