# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40887

SCOTT and MERI BYBEE, husband and
wife,

    Plaintiffs-Appellants,

v.

PATRICK D. GORMAN, M.D.,

    Defendant-Respondent,

and

FRED MEYER PHARMACY, FRED
MEYER STORES, INC., and JOHN DOE
PERSONS I through V,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2014 Term

2014 Opinion No. 96

Filed: September 19, 2014

Stephen Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of
Idaho, Bonneville County. Hon. Darren B. Simpson, District Judge.

The judgment of the district court is <u>vacated</u> and the case is <u>remanded</u> for further
proceedings.

Nalder Law Office, P.C., Idaho Falls, for appellants. G. Lance Nalder argued.

Quane Jones McColl, PLLC, Boise, for respondent. Terrence S. Jones argued.

_____

HORTON, Justice.

    This appeal arises from a medical malpractice claim brought by Scott and Meri Bybee against Dr. Patrick Gorman. The district court granted Dr. Gorman's motion for summary judgment after concluding that the Bybees' medical expert had failed to show adequate familiarity with the applicable standard of health care practice in the relevant community as required by Idaho Code sections 6-1012 and 6-1013, rendering his opinion inadmissible. We vacate the judgment of the district court and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1

Dr. Gorman is a board-certified cardiologist practicing in Idaho Falls. Scott Bybee sought treatment for atrial fibrillation from Dr. Gorman at Eastern Idaho Cardiology Associates in Idaho Falls in May and August of 2007. Dr. Gorman prescribed Bybee 200 mg tabs of amiodarone, a heart rhythm medication, and instructed him to take two tablets twice daily for one week and then to reduce the dose to one tablet twice daily. Dr. Gorman wrote a prescription for sixty, 200 mg tabs, with refills lasting one year.

After a catheterization procedure in the fall of 2007, Dr. Gorman diagnosed Bybee with borderline two-vessel coronary artery disease. Dr. Gorman recommended continued medical therapy, including taking amiodarone, but reduced the dose to one 200 mg tab per day, unless Bybee experienced any "breakthrough symptoms," in which case he was to resume taking two 200 mg tabs per day. Bybee was instructed to return to the clinic for follow-up care in six months, or as needed, with routine lab work to be completed prior to Bybee's visit.

Bybee did not return to Dr. Gorman for a follow-up appointment, but continued taking amiodarone from August of 2007, through early 2010. Fred Meyer Pharmacy twice received Dr. Gorman's authorization to refill the amiodarone prescription at Bybee's request.

In December of 2009, Bybee began suffering from a severe cough and shortness of breath. Bybee sought treatment from Dr. Reed Ward. Analysis of Bybee's blood showed abnormally high thyroid levels. Based on the results, Dr. Ward recommended Bybee return to Dr. Gorman. Bybee made an appointment with Dr. Gorman for January 19, 2010, but that appointment was rescheduled to February 1, 2010. The February 1, 2010 appointment was canceled because Dr. Gorman was unavailable and was never rescheduled.

Thereafter, Bybee sought treatment from Dr. David Liljenquist who concluded that amiodarone was causing Bybee's thyroid problems. Dr. Liljenquist instructed Bybee to stop taking amiodarone and Bybee complied. Bybee had his thyroid surgically removed on March 9, 2010. A pathology exam revealed degenerative changes of the thyroid gland characteristic of amiodarone toxicity.

The Bybees filed their complaint on April 11, 2011, alleging that Dr. Gorman was negligent in his care and treatment of Bybee due to Dr. Gorman's failure to monitor and periodically test Bybee for adverse side effects attributable to amiodarone.[1]

---

[1] The Bybees' complaint also alleged Fred Meyer was negligent in renewing the amiodarone prescription without proper authorization from Dr. Gorman. Fred Meyer filed a motion for summary judgment on January 7, 2013. After

2

Dr. Gorman filed a motion for summary judgment on August 13, 2012. The Bybees' response of October 24, 2012, was supported by the affidavit of Dr. Jeffery Osborn. In Dr. Gorman's reply, he argued that Dr. Osborn's affidavit was inadmissible as it failed to comply with the foundation requirements of Idaho Code sections 6-1012 and 6-1013, and I.R.C.P. 56(e). The Bybees moved to continue the summary judgment hearing or to supplement Dr. Osborn's affidavit on November 5, 2012. At the beginning of the hearing for summary judgment on November 7, 2012, the presiding judge disqualified himself and the motion hearing was reset to November 28, 2012.

On November 16, 2012, the Bybees submitted a Supplemental Affidavit of Dr. Osborn (the Supplemental Affidavit). On November 19, 2012, the Bybees filed a motion to shorten time so that their motion for leave to supplement Dr. Osborn's affidavit could be heard at the November 28, 2012, hearing. The district court granted this motion. At the November 28, 2012, hearing, the Bybees moved to disqualify the judge, the judge agreed, and the hearing was reset for January 2, 2013.

On December 4, 2012, the Bybees moved for the district court's consideration of additional affidavits, or in the alternative, a continuance of the summary judgment proceedings pursuant to I.R.C.P. 56(f). In this motion, the Bybees asked the district court to consider all additional affidavits filed prior to December 19, 2012, when deciding Dr. Gorman's motion for summary judgment. On December 14, 2012, the Bybees filed the affidavit of Dr. Matt Tannenbaum, who opined that Bybee's thyroid gland tissue showed changes commonly associated with amiodarone toxicity. On December 19, 2012, the Bybees filed an additional supplemental affidavit of Dr. Osborn (the Second Supplemental Affidavit). On December 20, 2012, Dr. Gorman moved to strike Dr. Tannenbaum's Affidavit, and Dr. Osborn's Supplemental and Second Supplemental Affidavits as untimely.

On January 2, 2013, the district court heard Dr. Gorman's motion for summary judgment and motion to strike, along with the Bybees' motions regarding the supplemental affidavits. The district court denied Dr. Gorman's motion to strike, reasoning that despite the untimeliness of the Bybees' motion to supplement, the purpose of the time limitations established by I.R.C.P. 56(c) was fulfilled because Dr. Gorman had ample time to respond.

the Bybees filed a Notice of Non-Objection, Fred Meyer's motion was granted. Thus, Fred Meyer is not a party to this appeal.

However, the district court concluded that Dr. Osborn's affidavits were inadmissible because they failed to demonstrate that he was familiar with the applicable standard of health care practice for the relevant community as required by Idaho Code section 6-1012. The district court found that the relevant community was Idaho Falls, and because Dr. Osborn practiced in Pocatello, not Idaho Falls, he was not qualified to testify as to the applicable standard of health care practice in Idaho Falls. Further, the district court concluded that Dr. Osborn failed to meet the foundation requirements for an out-of-area expert because Dr. Osborn failed to identify the cardiologist with whom he conferred regarding the applicable standard of health care practice in Idaho Falls. Having found Dr. Osborn's testimony to be inadmissible, the district court granted Dr. Gorman's motion for summary judgment. The district court entered a final judgment on March 5, 2013. The Bybees timely appealed.

## II. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002).

The admissibility of expert testimony offered in connection with a motion for summary judgment "is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment." *Arregui*, 153 Idaho at 804, 291 P.3d at 1003. When deciding whether expert testimony is admissible, "[t]he liberal construction and reasonable inferences standard does not apply." *Hall v. Rocky Mountain Emergency Physicians, LLC*, 155 Idaho 322, 325, 312 P.3d 313, 316 (2013) (quoting *Dulaney*, 137 Idaho at 163, 45 P.3d at 819). The trial court must look at the affidavit "testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible." *Id.* at 325–26, 312 P.3d at 316–17.

4

"This Court reviews challenges to the trial court's evidentiary rulings under the abuse of discretion standard." *Id.* at 326, 312 P.3d at 317. This Court engages in a three-part inquiry when reviewing a lower court's decision for an abuse of discretion: "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *McDaniel v. Inland Nw. Renal Care Grp.-Idaho, LLC*, 144 Idaho 219, 221–22, 159 P.3d 856, 858–59 (2007).

## III. ANALYSIS

This case requires this Court to once again address the admissibility requirements for expert testimony under Idaho Code sections 6-1012 and 6-1013. The Bybees raise two main issues on appeal: First, whether the district court improperly defined the relevant community; and second, whether the district court erred in concluding that out-of-area experts may not rely upon unidentified health care providers to familiarize themselves with the applicable standard of health care practice in the community.

### A. The district court abused its discretion by concluding that Dr. Osborn's affidavits were inadmissible.

"To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. The overarching issue in this case is whether Dr. Osborn's affidavits established that he had familiarized himself with the applicable standard of health care practice as required by Idaho Code sections 6-1012 and 6-1013.

Idaho Code section 6-1013 requires that a medical malpractice plaintiff establish the defendant's failure to meet the applicable standard of health care practice through the testimony of at least one "knowledgeable, competent expert witnesses." The statute prescribes the foundation required for such testimony:

> (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed . . . .

I.C. § 6-1013.

5

Rule 56(e) of the Idaho Rules of Civil Procedure imposes additional requirements for the admission of expert testimony in medical malpractice actions. *See Ramos v. Dixon*, 144 Idaho 32, 35, 156 P.3d 533, 536 (2007). Particularly,

> The party offering such evidence must show that it is based upon the witness' personal knowledge and that it sets forth facts as would be admissible in evidence. The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his [or her] testimony. Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under Rule 56(e).

*Hall*, 155 Idaho at 326, 312 P.3d at 317 (quoting *Dulaney*, 137 Idaho at 164, 45 P.3d at 820).

Idaho Code section 6-1012 requires that the applicable standard of health care practice be established by direct expert testimony, providing in pertinent part:

> In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care . . . on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto, *such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided*, as such standard existed *at the time and place of the alleged negligence of such physician* . . . and as such standard then and there existed with respect to the *class of health care provider that such defendant then and there belonged to* and in which capacity he, she or it was functioning . . . As used in this act, the term "community" refers to that *geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided*.

(emphasis added).

Thus, the medical expert must show that he or she is familiar with the standard of health care practice for the relevant medical specialty, during the relevant timeframe, and in the community where the care was provided. *Suhadolnik v. Pressman*, 151 Idaho 110, 116, 254 P.3d 11, 17 (2011); *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. Further, the medical expert must explain "*how* he or she became familiar with that standard of care." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820 (emphasis added).

1. **Although the district court erred by defining the relevant community as a matter of law, the error was harmless.**

As to the foundation requirements for the admissibility of expert testimony in this case, the parties agree that the relevant time frame is 2007 through 2009, and the relevant specialty is

cardiology. However, the parties sharply disagree as to the range of the geographical area ordinarily served by the hospitals[2] in Idaho Falls.

Idaho Code section 6-1012 defines "community" as "that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." The district court determined that Pocatello was not within that geographical area. Specifically, the district court explained:

> Although Idaho Falls lies within one hour's distance of Pocatello, it is served by Eastern Idaho Regional Medical Center [EIRMC]. Pocatello is served by Portneuf Medical Center. In between Idaho Falls and Pocatello lies the city of Blackfoot, itself served by Bingham Memorial Hospital.
>
> Osborn testified that EIRMC serves Pocatello patients as well as Idaho Falls patients. Taken as true for purposes of summary judgment, the fact that EIRMC serves patients from throughout the region does not alter the requirement that the Bybees must produce direct expert testimony of the applicable standard of health care practice of the community in which such care alleged was or should have been provided. The "community" at issue is Idaho Falls, not Pocatello. To hold otherwise would nullify the definition of "community" provided by the Idaho Legislature in Idaho Code § 6-1012.

On appeal, the Bybees argue that this conclusion was in error. The Bybees assert that the geographical scope of the community is a factual issue and that the record reflects that the general hospitals in Idaho Falls regularly served patients from Pocatello. The Bybees also argue that the geographical area that makes up the community in this case is a fact in dispute, and the district court erred by not viewing the facts in the Bybees' favor. The Bybees continue that if the district court had properly determined Pocatello to be within the community, then Dr. Osborn's affidavits would meet the foundation requirements of a local expert with actual knowledge of the applicable standard of health care practice. In response, Dr. Gorman argues that it is undisputed that the care was provided in Idaho Falls, making the relevant community Idaho Falls, not Blackfoot, Pocatello, or the greater undefined area of Eastern Idaho.

---

[2] Both parties argue that the relevant community is defined by the service area of Eastern Idaho Regional Medical Center (EIRMC) *or* Mountain View Hospital (MVH). In this respect, the parties err. The standard prescribed by Idaho Code section 6-1012 is defined by reference to a single hospital, specifically "*the* licensed general hospital at or nearest to which such care was or allegedly should have been provided." (emphasis added). The district court focused on EIRMC, presumably because that is the only hospital for which information was provided as to the source of its patient base. The record is completely silent as to the geographical origins of the patients served by MVH. We note that the record is similarly silent as to whether EIRMC and MVH are licensed general hospitals. Because the parties have not identified this as an issue on appeal, we will not address it further.

Idaho Code section 6-1013's foundation requirements for the admissibility of expert testimony compel plaintiffs to show how the expert is familiar with the standard of health care practice for the community at issue. *See Ramos*, 144 Idaho at 37, 156 P.3d at 538. Thus, a threshold matter to the admissibility of the expert's testimony is defining the community. Importantly, "[t]he liberal construction and reasonable inferences standard does not apply" when deciding whether the testimony is admissible in connection with a motion for summary judgment. *Hall*, 155 Idaho at 325, 312 P.3d at 316. This Court has consistently explained that "[t]he admissibility of the expert testimony is an issue that is separate and distinct from whether that testimony is sufficient to raise genuine issues of material fact . . . ." *Id.*

Previously, this Court has considered the meaning of "ordinarily served" for the purpose of defining the community in medical malpractice cases only to observe the absence of evidence on the subject. In *Ramos*, we considered the situation of a physician, who practiced in Idaho Falls about thirty miles from Blackfoot. We stated that "Idaho Falls could be within the geographical area ordinarily served by the Bingham Memorial Hospital in Blackfoot. The existence of a licensed general hospital in Idaho Falls would not preclude Idaho Falls from being within that geographical area. Hospitals in nearby towns can certainly be in competition with each other." 144 Idaho at 35, 156 P.3d at 536. We concluded that "whether Idaho Falls is within the geographical area ordinarily served by the hospital in Blackfoot is a factual issue. . . ." *Id*. Noting the complete absence of evidence in the record on this issue, we upheld the district court's determination that Idaho Falls was not within the geographical area served by Bingham Memorial Hospital. *Id*.

Likewise, this Court addressed the geographical scope of the community in *Gubler v. Boe*, where the plaintiff was treated and the alleged negligence occurred in Pocatello. 120 Idaho 294, 295, 815 P.2d 1034, 1035 (1991). We affirmed the district court's conclusion that an expert witness who practiced in Idaho Falls was not adequately familiar with the standard of care for the relevant community because the community was Pocatello, and did not include Idaho Falls. *Id.* at 298, 815 P.2d at 1038. As in *Ramos*, the plaintiff in *Gubler* made no attempt to show that Idaho Falls was in that area ordinarily served by the licensed general hospital in Pocatello. *Id.*

The district court's explanation of its holding that Pocatello was not within the geographical area ordinarily served by EIRMC appears to reflect its view that the geographical scope of the community was a legal, rather than factual, determination. To this extent, the district

8

court erred. However, because we conclude that the Bybees failed to provide necessary evidence that would support such a finding, we find this error to be harmless.

This case provides us with the opportunity to provide further guidance as to the meaning of "ordinarily served" in Idaho Code section 6-1012, although we recognize that our explanation will likely leave judges and practitioners unsatisfied. This is a consequence of the legislature's choice of language defining "community." Rather than choosing to define community by means of distance from the nearest licensed general hospital, the legislature chose to define community by reference to the locations from which the patient base of the hospital is derived. If users of the hospital's services commonly go from one location to the place where the hospital is located, then that location falls within the geographical area which constitutes the community. As we implicitly recognized in *Ramos*, it is because people residing at one location may commonly use the services provided by more than one hospital, communities may overlap one another. 144 Idaho at 35, 156 P.3d at 536.

The imprecision of this definition of community lies in the word "ordinarily."[3] Although the word signifies some degree of frequency, judges[4] viewing the same evidence may reach differing conclusions as to whether patients from a particular location use a hospital's services on a regular or common basis. Although perhaps creating uncertainty for the parties and their lawyers, this is entirely consistent with the discretionary nature of the decision confronting a trial judge addressing a challenge to the admissibility of a medical expert's testimony.

We now consider the foundation that the Bybees attempted to establish as to Dr. Osborn's direct knowledge of the applicable standard of health care practice in Idaho Falls. On this subject, his first affidavit simply stated: "I have been licensed to practice medicine in Idaho

---

[3] "Ordinarily" is an adverb derived from the adjective "ordinary" meaning: "1. Usually; as a rule 2. In an ordinary manner or to an ordinary degree." Webster's New World Dictionary 1001 (2d College ed.1976). "Ordinary," in this context, means "1. customary; usual; regular; normal 2. a) familiar; unexceptional; common." *Id*.

[4] The Bybees are incorrect in their assertion that the jury is the factfinder as to the geographical scope of the community. Rather, I.R.E. 104(a) places this responsibility upon the judge. Rule 104, I.R.E., provides:

> (a) Questions of admissibility generally. *Preliminary questions concerning the qualifications of a person to be a witness*, the existence of a privilege, *or the admissibility of evidence shall be determined by the court*, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

We caution judges that, in making such decisions, the trial court should refrain from resolving conflicting factual disputes. Thus, the "trial court should not involve itself in weighing the conflicting evidence" but simply determine "whether, for the purposes of surviving summary judgment," the plaintiff has offered sufficient evidence. *See Montgomery v. Montgomery*, 147 Idaho 1, 7, 205 P.3d 650, 656 (2009) (noting the "well-established rule that a trial court, in ruling on a motion for summary judgment, is not to weigh evidence or resolve controverted factual issues.").

9

since 2005 and am familiar with the standard of care applicable to cardiologists in the Idaho Falls/Pocatello area as it existed during 2007 through 2009. . . ." This conclusory statement of familiarity with the applicable standard of health care practice, without identifying the manner in which such familiarity was developed, is insufficient to establish foundation for the admissibility of Dr. Osborn's testimony. *Ramos*, 144 Idaho at 37, 156 P.3d at 538; *see also McDaniel v. Inland Nw. Renal Care Grp.-Idaho, LLC*, 144 Idaho 219, 223, 159 P.3d 856, 860 (2007); *Hoover v. Hunter*, 150 Idaho 658, 662-63, 249 P.3d 851, 855-56 (2011).

The only evidence as to whether Pocatello is within the geographical area ordinarily served by EIRMC is found in the Supplemental Affidavit. There, Dr. Osborn attempted to define the applicable community by reference to a licensed general hospital, stating: "The community, in terms of the area served by EIRMC hospital in Idaho Falls, consisted of people from both Idaho Falls and Pocatello."[5] We find this statement to be too conclusory to satisfy the foundation requirements of Idaho Code sections 6-1012 and 6-1013. This statement does not identify the basis of Dr. Osborn's knowledge as to where EIRMC patients come from and, more importantly, it does not attempt to identify, or even approximate, the frequency which patients from Pocatello elect to receive services at EIRMC as opposed to Portneuf Medical Center, Bingham Memorial Hospital, MVH or other hospitals. In the absence of such evidence, we find the district court's error to be harmless.

**2. The district court erred by concluding that Dr. Osborn's reliance upon an unidentified Idaho Falls cardiologist to familiarize himself with the applicable standard of health care practice was fatal to the admissibility of Dr. Osborn's affidavits.**

After concluding that Dr. Osborn did not meet the foundation requirements of a local expert, the district court considered whether Dr. Osborn qualified as an out-of-area expert who adequately familiarized himself with the applicable standard of health care practice by speaking with a local specialist. In the Supplemental Affidavit, Dr. Osborn testified that he spoke with an unidentified board-certified cardiologist who maintained a practice in Idaho Falls[6] during the time period 2007 through 2009. The district court concluded that Dr. Osborn's "failure to name the cardiologist with whom he conferred proves fatal to the admissibility of his affidavit." The

---

[5] We note that the Supplemental Affidavit contains information relating to Dr. Osborn's Pocatello practice, in which he treated patients from both Idaho Falls and Pocatello, and his understanding that Idaho Falls-based cardiologists saw patients from both cities. This information is irrelevant to the pertinent hospital's service area.

[6] The parties both agree that Idaho Falls is within the geographical scope of the relevant community.

10

district court continued, Dr. Osborn's "consultation with a cardiologist practicing in Idaho Falls during the relevant time period is vital, but without revelation of the cardiologist's name, Gorman is estopped from investigating his or her credentials and personal knowledge of the standard of care."

The Bybees argue that there is no requirement that the identity of a consulting physician be disclosed to meet the foundation requirements of Idaho Code section 6-1013 and I.R.C.P. 56(e). Dr. Gorman counters that use of an anonymous consultant will always fail to meet the foundation requirements for admissibility of an out-of-area medical expert's testimony.

Idaho Code section 6-1013 specifically provides that the requirement that a plaintiff offer testimony of an expert familiar with the applicable standard of health care practice does not "prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices" of the relevant community. "One method for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local specialist." *Hall*, 155 Idaho at 327, 312 P.3d at 318 (quoting *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002)). This Court has consistently held that the out-of-area expert's affidavit must state *how* the local expert became familiar with the community standard of care. *Id.*; *see also Dulaney*, 137 Idaho at 164, 45 P.3d at 820.

However, this Court has never held that failure to name the local expert with whom an out-of-area expert confers is fatal to the admissibility of that affidavit so long as the other foundation requirements are met. *See e.g. Dulaney*, 137 Idaho at 169, 45 P.3d at 825 (explaining that the affidavit did "not allege specific facts showing that the anonymous professor was familiar with the standard of care" for the specialty, at the time, and in the place of the alleged negligence). Indeed, a majority of this Court recently expressed "grave misgivings" about a plurality opinion's suggestion "that the identity of the local health care provider with whom a Plaintiff's expert consults must be disclosed as part of the foundation for that opinion," expressing our concern that such a rule "elevated the requirements for an expert's affidavit beyond the requirements of I.C. § 6–1013." *Arregui v. Gallegos-Main*, 153 Idaho 801, 811, 291 P.3d 1000, 1010 (2012) (Horton, J., specially concurring).

Today we hold that an affidavit that fails to identify an anonymous consultant does not categorically fail to comply with the foundation requirements for admissibility of an out-of-area

expert's testimony under Idaho Code section 6-1013. Rather, the inquiry remains whether the out-of-area expert demonstrates how he or she became adequately familiar with the community standard of health care practice, making it sufficiently clear that the expert consulted with a local specialist[7] who had actual knowledge of the standard of health care practice for the proper class of provider during the relevant time period.

This holding is consistent with our decision in *Dunlap v. Garner*, 127 Idaho 599, 903 P.2d 1296 (1994). In *Dunlap*, the plaintiff's out-of-area expert testified in his affidavit that he had spoken with two local practitioners regarding the community standard of health care practice. 127 Idaho at 602, 903 P.2d at 1299. In response, the defendants submitted the affidavits of the local practitioners, who both indicated that they had not discussed the standard of care with plaintiff's expert. *Id.* at 603, 903 P.2d at 1300. The district court granted defendant's summary judgment motion after concluding that plaintiff's expert was not credible as to his actual knowledge of the local standard of care, rendering his affidavit inadmissible. *Id.* at 604, 903 P.2d at 1301. We concluded that the district court erred by weighing the relative credibility of the parties' experts and resolving the conflicting accounts given in their affidavits. *Id.* at 605, 903 P.2d at 1302. The statements of the plaintiff's expert, taken as true, were sufficient to qualify him to express an expert opinion regarding whether the defendant violated the community standard of health care practice. *Id.*

> In the Supplemental Affidavit, Dr. Osborn stated:
>
> 4. I have spoken with a board certified cardiologist who maintained a clinical practice in Idaho Falls, Idaho during the 2007-2009 time frame about the standard of care in prescribing Amiodarone in Idaho Falls and Pocatello. From my conversations and my own clinical practice in Pocatello during that time frame, I am familiar with the standard of care for cardiologists in prescribing Amiodarone in both Idaho Falls as well as Pocatello.

Accepting the truth of this affidavit, the unidentified physician practiced in the relevant community at the same time as the events that gave rise to the action and in the same specialty as Dr. Gorman. This is sufficient to demonstrate that the unidentified consultant was familiar with

---

[7] "[T]hat specialist need not have practiced in the same field as the defendant, so long as the consulting specialist is sufficiently familiar with the defendant's specialty." *Suhadolnik v. Pressman*, 151 Idaho 110, 116, 254 P.3d 11, 17 (2011) (citing *Newberry v. Martens*, 142 Idaho 284, 292, 127 P.3d 187, 195 (2005)). "The plaintiff's expert can also make inquiries to another out-of-area specialist, so long as that specialist has had sufficient contacts with the area in question to demonstrate personal knowledge of the local standard." *Id.* (citing *Shane v. Blair*, 139 Idaho 126, 130, 75 P.3d 180, 184 (2003)).

the relevant and applicable standard of health care practice.[8] Accordingly, we hold that the district court applied an erroneous legal standard and therefore erred in concluding that Dr. Osborn's affidavit was inadmissible solely because he relied on an unidentified physician to familiarize himself with the community standard of health care practice.

### 3. Dr. Osborn's affidavits complied with Idaho Code section 6-1013 and I.R.C.P. 56(e).

As an out-of-area expert, Dr. Osborn's affidavits met all other foundation requirements of Idaho Code section 6-1013 and I.R.C.P. 56(e). Idaho Code section 6-1013 "requires that 'the expert must show that he or she actually holds the opinion, that it is held with a reasonable degree of medical certainty, and that he or she is not only an expert but has actual knowledge of the applicable community standard.' " *Shane*, 139 Idaho at 129, 75 P.3d at 183 (quoting *Kolln v. St. Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 329, 940 P.2d 1142, 1148 (1997)).

Dr. Osborn testified to the following in his first affidavit:

1. I am a cardiologist, board certified, with licenses to practice in both Idaho and Utah. I have maintained a cardiology practice in eastern Idaho . . . I have been licensed to practice medicine in Idaho since 2005 and am familiar with the standard of care applicable to cardiologists in the Idaho Falls/Pocatello area as it existed during 2007 through 2009 . . . .

. . . .

Amiodarone/Pacerone must be thoughtfully prescribed, carefully monitored for its effects in the human system, and followed very closely by the prescribing physician. This requirement of careful monitoring of Amiodarone/Pacerone is now and was during the 2007 through 2009 time frame applicable as the standard of care in both east Idaho as well as Utah, and all other places that I have practiced.

. . . .

It is my opinion that Dr. Gorman violated the applicable standard of care for a physician practicing in Idaho Falls, Idaho in prescribing and monitoring of Amiodarone/Pacerone for Scott Bybee.

In his Supplemental Affidavit, Dr. Osborn testified:

From my conversations and my own clinical practice in Pocatello during that time frame [2007-2009], I am familiar with the standard of care for cardiologists in prescribing Amiodarone in both Idaho Falls as well as Pocatello.

. . . .

---

[8] The corollary of this holding is that defendants should be permitted to conduct discovery as to the identity of consulting physicians. As in *Dunlap*, an expert's claim to have consulted with a local practitioner in order to gain familiarity with the applicable standard of health care practice may present questions of credibility for consideration by the ultimate trier of fact.

> My opinion remains the same. Dr. Gorman violated the applicable standard of care for a physician practicing in Idaho Falls, Idaho in prescribing and monitoring Amiodarone/Pacerone for Scott Bybee . . . .

Then, in the Second Supplemental Affidavit, Dr. Osborn stated:

> The opinions expressed in my initial affidavit and the opinions expressed herein I hold to a reasonable degree of medical certainty.

These affidavits contain specific facts showing that Dr. Osborn had familiarized himself with the applicable standard of health care practice and held the opinion, to a reasonable degree of medical certainty, that Dr. Gorman violated the standard of health care practice for cardiologists in Idaho Falls between 2007 and 2009. Because Dr. Osborn's expert testimony complied with Idaho Code sections 6-1012 and 6-1013, and I.R.C.P. 56(e), the district court failed to apply the applicable legal standards and thus, abused its discretion by determining Dr. Osborn's affidavit testimony to be inadmissible. Accordingly, we vacate the judgment in favor of Dr. Gorman.

**B. Dr. Gorman is not entitled to attorney fees on appeal.**

Dr. Gorman requests attorney fees on appeal pursuant to Idaho Code section 12-121 and I.R.C.P. 54(e)(1). Idaho Code section 12-121 authorizes an award of attorney fees in a civil action to the prevailing party. Because Dr. Gorman is not the prevailing party on appeal, he is not entitled to fees. *Johnson v. Highway 101 Investments, LLC*, 156 Idaho 1, 5, 319 P.3d 485, 489 (2014).

### IV. CONCLUSION

We vacate the judgment of the district court dismissing the Bybees' action against Dr. Gorman and remand the matter to the district court for further proceedings consistent with this opinion. We award costs on appeal to the Bybees.

Chief Justice BURDICK and Justices EISMANN and W. JONES, **CONCUR**.

J. JONES, Justice, specially concurring.

I concur in the Court's opinion, particularly the holding that an affidavit which fails to identify an anonymous consultant does not categorically fail to comply with the foundation requirements for admissibility of an out-of-area expert's testimony under Idaho Code section 6-1013. I do not read the opinion in *Arregui v. Gallegos-Main*, 153 Idaho 801, 291 P.3d 1000 (2012) to say that failure to name a local expert with whom an out-of-state expert confers is fatal

14

to the admissibility of the latter's testimony. In *Arregui*, the identity of the local expert was merely part of a laundry list of problems identified with regard to the local expert's experience and qualifications. With regard to the out-of-state expert, we stated "she never identified the local chiropractor, she did not describe the type of chiropractic practice he ran, nor how he became aware of the local standard of care, how long he practiced in the Nampa-Caldwell area, or whether he was familiar with torticollis, and the specific procedures allegedly used on the Patient." 153 Idaho at 809, 291 P.3d at 1008. The focus was not upon the fact that the local expert was unnamed, but that there was nothing in the out-of-state expert's affidavit to show the qualifications of the local chiropractor to testify as to the local standard of care for the procedure at issue in that case. I would certainly never subscribe to the proposition "that the identity of the local health care provider with whom a Plaintiff's expert consults must be disclosed as part of the foundation for that opinion."