## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 43725

JAYMIE QUIGLEY, an individual, and
PAXTON QUIGLEY, an individual,

    Plaintiffs-Respondents,

v.

TRAVIS KEMP, an individual,

    Defendant-Appellant,

and

SAINT ALPHONSUS REGIONAL
MEDICAL CENTER, Inc., an Idaho
corporation, and CHRISTOPHER TOBE,
an individual,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2017 Term

2017 Opinion No. 44

Filed: May 11, 2017

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, Ada County. Hon. Richard Greenwood, District Judge.

The order of the district court is <u>vacated</u>, and the case is <u>remanded</u>.

Duke Scanlan & Hall, PLLC, Boise, for appellants. Keely E. Duke argued.

Fisher Rainey Hudson, Boise, for respondents. Rebecca A. Rainey argued.

_____

BRODY, Justice.

    This case involves a thorny discovery dispute in a medical malpractice case. The issue to be decided is whether a plaintiff must disclose the identity of a non-testifying medical expert who has been consulted by a testifying expert to familiarize the testifying expert with the applicable local standard of care. This issue has been addressed by district courts, but this Court has never ruled on it. The district court held that Rule 26(b)(4)(B) of the Idaho Rules of Civil Procedure shielded the Quigleys from disclosing the identity of the non-testifying medical

1

expert. Defendant Dr. Travis Kemp was granted a permissive, interlocutory appeal to resolve this issue.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Jaymie and Paxton Quigley brought this medical malpractice action against Dr. Travis Kemp, a board-certified orthopedic surgeon, Dr. Christopher Tobe, a board-certified emergency medicine physician, and Saint Alphonsus Regional Medical Center ("SARMC"). Dr. Kemp performed surgery on Mrs. Quigley's right ankle and placed a temporary splint over her right foot. Following surgery, Mrs. Quigley suffered several acute pain episodes. Allegedly, SARMC's nursing staff expressed reservations about Mrs. Quigley being discharged with uncontrolled pain, but told Mrs. Quigley that Dr. Kemp would not keep her any longer in the hospital. Mrs. Quigley was discharged.

Several hours after being discharged, Mrs. Quigley went back to the SARMC emergency room because of severe pain. Dr. Tobe examined her and admitted her to the hospital. Once admitted, a nurse cut the splint away from Mrs. Quigley's foot, providing Mrs. Quigley with immediate relief. Dr. Kemp examined Mrs. Quigley and noted that the pressure from the post-operative splint caused permanent damage to her foot that would require future treatment. The Quigleys later brought this malpractice action.

Shortly after receiving the complaint, Dr. Kemp sent the Quigleys the following interrogatory requesting the identity of any medical providers who were called to familiarize an expert witness with the local standard of care:

> INTERROGATORY NO.5: Do you intend to call any person as an expert witness at trial? If so, with regard to each such person, state:
> (a) the name, address, telephone number, employer and job title or classification of such person;
> (b) the subject matter on which the expert is expected to testify;
> (c) any and all opinions the expert witness is anticipated to testify to;
> (d) the substance of the facts and opinions to which the expert is expected to testify and a summary of grounds for each opinion;
> (e) the information or materials provided to, or received from, the expert; and
> (f) ***the name of any medical provider that any of plaintiff's expert(s) called to familiarize himself/herself with the applicable standard of care in this case.***

(Emphasis added).

As the case progressed, the Quigleys disclosed Dr. Aprajita Nakra, an out-of-state board-certified doctor of podiatric medicine, as their liability expert to testify concerning the negligence of all defendants. As part of their disclosure, the Quigleys included Dr. Nakra's resume and a

2

summary of what steps she took to familiarize herself with the local standard of care as required by the Medical Malpractice Act (specifically, Idaho Code sections 6-1012 and 6-1013). The disclosure explained that Dr. Nakra has experience working with board-certified orthopedic surgeons like Dr. Kemp and is familiar with the national standard of care applicable to them. The disclosure also provided that Dr. Nakra consulted with a physician assistant who worked with orthopedic surgeons in Boise at the time Mrs. Quigley was treated and that the physician assistant confirmed that the national standard of care with which Dr. Nakra was familiar was the same standard of care that was applicable in Boise at the time of Mrs. Quigley's surgery. The disclosure did not name the physician assistant, but stated that the person practiced in a post-operative setting alongside and in conjunction with board-certified orthopedic surgeons in Boise at the time of Mrs. Quigley's surgery.

Shortly after receiving the disclosure, Dr. Kemp sent the Quigleys a letter requesting the identity of the physician assistant and asking for available deposition dates. The Quigleys denied the request on the grounds that the identity of the physician assistant was protected under Idaho Rule of Civil Procedure 26(b)(4)(B) because the provider was a non-testifying expert. Dr. Kemp filed a Motion to Compel the identity of the physician assistant in response to his initial interrogatory, arguing that the identity is relevant to whether Dr. Nakra has adequately familiarized herself with the local standard of care as well as other issues of credibility. The Quigleys filed a competing Motion for a Protective Order. The district court denied Dr. Kemp's Motion to Compel and granted Plaintiffs' Motion for a Protective Order prohibiting the discovery. The district court recognized that this discovery issue has yet to be resolved by this Court and welcomed definitive guidance on the issue. We granted an interlocutory appeal.

## II.  ISSUE PRESENTED ON APPEAL

Whether Rule 26(b)(4)(B) of the Idaho Rules of Civil Procedure protects the identity of a medical provider who was consulted by a liability expert in order to familiarize herself with the applicable local standard of care.

## III. STANDARD OF REVIEW

"[C]ontrol of discovery is an area within the discretion of the trial court. Therefore, the proper standard for reviewing a trial court's grant of a protective order is abuse of discretion." *Vaught v. Dairyland Ins. Co.*, 131 Idaho 357, 360, 956 P.2d 674, 677 (1998) (internal citations omitted). Accordingly, a trial court's decision to grant or deny a motion to compel will only be

reversed when there has been a clear abuse of discretion. *Doe v. Shoshone-Bannock Tribes*, 159 Idaho 741, 745, 367 P.3d 136, 140 (2015). To determine whether a trial court abused its discretion, this Court examines:

> (1) [W]hether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Id*. (quoting *Kirk v. Ford Motor Co.*, 141 Idaho 697, 701, 116 P.3d 27, 31 (2005)).

## IV. ANALYSIS

The district court denied Dr. Kemp's Motion to Compel the identity of the physician assistant based on Rule 26(b)(4)(B) of the 2015 version of the Idaho Rules of Civil Procedure. The Rule states:

> ***A party may not discover facts known or opinions held by an expert*** who has been retained or ***specially employed*** by another party in anticipation of litigation or preparation for trial and ***who is not expected to be called as a witness*** at trial, except as provided in Rule 35(b) or ***except upon a showing of exceptional circumstances*** under which it is ***impracticable*** for the party seeking discovery to obtain facts or opinions on the same subject by other means.

I.R.C.P. 26(b)(4)(B) (emphasis added). It is important to note that the rule has been subsequently amended and the new language may now be found at 26(b)(4)(D). However, this amendment and its minor changes do not substantively change the Rule. This opinion is binding as to the current version of the Rule as well.

The district court held that the physician assistant was retained by the Quigleys in preparation for trial and is not expected to be called as a witness. The district court reasoned that the facts or opinions at issue are the local standard of care and whether Dr. Kemp met that standard. Ultimately, the district court concluded that Dr. Kemp had "lots of folks" ready to testify about the local standard of care, and therefore, he had not made a showing of "exceptional circumstances" requiring the disclosure of the physician assistant's identity. We find that the district court's reliance on Rule 26(b)(4)(B) was misplaced and warrants reversal.

Forty years ago, the Idaho legislature passed the Medical Malpractice Act, which requires plaintiffs in a medical malpractice action to prove the local standard of care that applied to their medical provider at the time of the alleged malpractice. *See* I.C. § 6-1012. The act provides in detail what foundation must be laid before the testimony of a testifying expert is admissible:

4

The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) *that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.*

I.C. § 6-1013.

Under this statute, a plaintiff's testifying medical expert must be able to demonstrate "actual knowledge" of the local standard of care. "Actual knowledge" does not mean that the testifying expert has to practice medicine in the same community or even the same specialty as the provider at issue. Section 6-1013 expressly allows an out-of-state/out-of-area expert to testify so long as the expert "adequately" familiarizes himself with the standards and practices applicable in a given case.

The Quigleys contend that there is nothing in the Medical Malpractice Act which requires the disclosure of the identity of the physician assistant as part of the foundation for Dr. Nakra's testimony. We agree and have addressed this argument. In *Bybee v. Gorman*, 157 Idaho 169, 335 P.3d 14 (2014), we reversed the district court's decision to grant summary judgment in favor of a medical provider based on the plaintiff's failure to identify a non-testifying medical expert. The district court concluded that the testifying medical expert's "failure to name the cardiologist with whom he conferred proves fatal to the admissibility of his affidavit." *Id*. at 177, 335 P.3d at 22. We reversed that decision, stating: "Today we hold that an affidavit that fails to identify an anonymous consultant does not categorically fail to comply with the foundation requirements for admissibility of an out-of-area expert's testimony under Idaho Code section 6-1013." *Id.* at 178, 335 P.3d at 23. Certainly, if Dr. Nakra were on the witness stand testifying as to how she became familiar with the local standard of care applicable to Dr. Kemp, there is nothing in Section 6-1013 which would require her to identify the physician assistant by name. While it may leave an unanswered question in the minds of the jurors, we understand that such a decision is within the discretion of the Quigleys' attorney and does not render her testimony inadmissible.

Having said that, the Quigleys also argue that if this Court were to rule that disclosure of the physician's identity is required, it would impermissibly heighten the foundation requirements of Section 6-1013. In particular, they contend that the holding in *Bybee* cannot be reconciled with footnote 8 of that decision which states:

> The corollary of this holding is that defendants should be permitted to conduct discovery as to the identity of consulting physicians. As in [*Dunlap v. Garner*, 127 Idaho 599, 903 P.2d 1296 (1994)], an expert's claim to have consulted with a local practitioner in order to gain familiarity with the applicable standard of health care practice may present questions of credibility for consideration by the ultimate trier of fact.

*Id*. at 180, 335 P.3d at 14, 25 n.8. The Quigleys' argument confuses the issue of admissibility with discoverability and is not well taken.

The identity of the physician assistant is discoverable under Rule 26(b)(1)(A) of the Idaho Rules of Civil Procedure—not the Medical Malpractice Act. The Rule specifically provides for the discovery of any nonprivileged matter that is relevant to a party's claim or defense, including the *identity* of persons who know of any discoverable matter:

> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: (1) **Parties may obtain discovery regarding any matter, not privileged,** which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, **including** the existence, description, nature, custody, condition and location of any books, documents, or tangible things and **the identity and location of persons having knowledge of any discoverable matter.** It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

I.R.C.P. 26(b)(1) (emphasis added).

Dr. Kemp argues persuasively that the identity of the physician assistant should be discoverable because it enables him to explore and raise issues pertaining to Dr. Nakra's actual knowledge of the local standard of care. If Dr. Nakra were to testify at trial that she consulted with a local physician assistant about the standard of care without revealing the person's identity (which we agree may be permissible), a natural question to ask on cross-examination would be "who did you talk to." The answer to this question could be important because it might reveal, for example, that the conversation did not actually take place. *See, e.g.*, *Dunlap v. Garner*, 127 Idaho 599, 604–05, 903 P.2d 1296, 1301–02 (1994) (involving the situation where a defendant submitted affidavits from local physicians stating that they did not consult with the plaintiff's

testifying expert). It might reveal that the physician assistant did not actually work in Boise at the time in question or had a suspended license. Or, it might reveal that the physician assistant had a run-in with Dr. Kemp in the past and might have an ax to grind now. Of course all of this is purely hypothetical, but the point is that Dr. Kemp has a legitimate interest in knowing who the physician assistant is so he can prepare his defense. There is nothing inconsistent or irreconcilable with the Court holding that a testifying medical expert's testimony can be admitted without identifying the medical expert who provided the local standard of care, but that the identity of that non-testifying expert is subject to a properly formulated discovery request.

The Quigleys argue that this Court should use Rule 26(b)(4)(B) to protect the identity of the physician assistant. We decline to do so. Rule 26(b)(4)(B) does not apply to non-testifying expert witnesses who have been called to provide the foundation for a testifying witness' testimony. Our discovery rules require a testifying witness to disclose the basis and reasons for all opinions and all of the data and information considered by the witness in forming the opinions. *See* I.R.C.P. 26(b)(4)(A)(i) (2015). This requirement fairly encompasses the names of any non-testifying medical experts who provide information concerning the local standard of care. If we were to interpret Rule 26(b)(4)(B) as the Quigleys advocate, we would effectively undermine the full disclosure requirements in Rules 26(b)(1) and 26(b)(4)(A)(i). As such, we find that the district court's decision to preclude discovery under Rule 26(b)(4)(B) was not consistent with applicable legal standards, and constitutes reversible error.

We do not make this decision lightly. We understand that finding a medical expert who has actual knowledge of the local standard of care and who is willing to get involved in a medical malpractice action against a colleague is difficult at best. In some cases, it may be impossible depending on the location and specialization of the medical provider at issue. Some may argue that our holding today will further impede plaintiffs' ability to get help from the local medical community. We understand that the Medical Malpractice Act poses real, substantial hurdles for plaintiffs bringing medical malpractice cases. We have an obligation, however, to see that the laws passed by the legislature are followed. We also believe that secreting the identity of a medical expert who provides the foundation for a testifying expert's testimony is incompatible with our system of justice.

## V. CONCLUSION

7

We vacate the district court's order and remand for further proceedings consistent with this opinion. Costs to Appellant.

Chief Justice BURDICK, and Justices EISMANN, JONES and HORTON CONCUR.