# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52101

KIRK HARTMAN, individually, and as
surviving spouse of Sheri Hartman; KIRK
HARTMAN, as Personal Representative of the
Estate of Sheri Hartman; ASHLEY
HARTMAN ROBERTS, adult daughter of
Sheri Hartman, deceased; JORDAN
HARTMAN, adult son of Sheri Hartman,
deceased; JOSH HARTMAN, adult son of
Sheri Hartman, deceased,

    Plaintiffs-Appellants,

v.

POCATELLO HOSPITAL, LLC, a Delaware
limited liability company dba PORTNEUF
MEDICAL CENTER, LLC; DR. AMBER
SCHROEDER, P.A.; DR. WILLIS
PARMLEY, ROCKY MOUNTAIN
PHYSICIAN GROUP, LLC; DR. STEPHEN
HANSEN, IDAHO SPORTS AND SPINE,
LLC,

    Defendant-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2026 Term

Opinion Filed: June 1, 2026

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Rick Carnaroli, District Judge.

The district court's amended judgment is <u>affirmed in part</u> and <u>vacated in part</u>; the district court's summary judgment order is <u>reversed in part</u> and <u>affirmed in part</u>; the district court's substitute decision and order is <u>affirmed</u>; and the case is <u>remanded</u> for further proceedings.

Barton Atkinson & Murdoch, P.C., Rexburg, and DeFriez Law, Caldwell, for Appellants. Marcia Murdoch, argued.
Tolman Brizee & Cannon, PC, Twin Falls, attorney for Portneuf Medical Center, LLC. Nicole L. Cannon, argued.

Hawley Troxell Ennis & Hawley, LLP, Pocatello, attorney for Respondents Stephen Hansen, M.D., and Idaho Sports and Spine, LLC. Mindy M. Muller, argued.

Quane McColl Metz, PLLC, Boise, attorney for Respondents Dr. Willis Parmley, Amber Schroeder, P.A., and Rocky Mountain Physician Group, LLC. Vala L. Metz, argued.

———————————

BRODY, Justice

In this medical malpractice action, the Hartman family appeals the district court's imposition of discovery sanctions and its entry of summary judgment in favor of the medical providers who prescribed or administered transdermal fentanyl patches to Sheri Hartman, ultimately leading to her death. This appeal presents two questions. First, whether a plaintiff in a medical malpractice action must disclose the identities of non-testifying local standard-of-care experts when the plaintiff's testifying experts rely "primarily" on a defendant's deposition testimony to establish familiarity with the local standard of care. Second, whether summary judgment is properly awarded to defendant medical providers when a plaintiff fails to rebut a defendant's evidence that the precise pharmacokinetic mechanism of injury was not foreseeable to the providers.

Consistent with our holding in *Quigley v. Kemp*, 162 Idaho 408, 412, 398 P.3d 141, 145 (2017), we reiterate that the identity of a non-testifying local standard-of-care expert must be disclosed as part of expert-witness discovery. A plaintiff's failure to make this disclosure may result in discovery sanctions, including the exclusion of the plaintiff's expert witnesses, as occurred here. *See generally* I.R.C.P. 37(c)(1). We further hold that, to withstand summary judgment on the issue of proximate causation, a medical-malpractice plaintiff must demonstrate that a reasonable medical provider in a defendant's position would have foreseen the general risk of harm arising from the allegedly negligent treatment, not the specific mechanism of injury through which the harm ultimately occurred. *See generally Orthman v. Idaho Power Co.*, 130 Idaho 597, 601, 944 P.2d 1360, 1364 (1997).

Because the district court acted consistently with *Quigley*, we affirm its order striking the Hartmans' expert witnesses based on their failure to timely disclose the non-testifying local standard-of-care experts on whom their out-of-state experts relied. However, the district court erred in granting summary judgment to the emergency department providers and to Portneuf Medical Center ("PMC") on the ground that the Hartmans failed to controvert the defense's expert testimony that no fentanyl from the patch they dispensed and administered would have remained in Mrs. Hartman's system at the time of her death. We therefore reverse the district court's grant

2

of summary judgment on causation and remand for further proceedings against PMC since the claim against the hospital is the only one that remains after we affirmed the district court's discovery sanctions.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Kirk Hartman took his wife, Sheri, to the emergency department at PMC on the afternoon of November 16, 2019, because she was experiencing severe back pain. Physician Assistant Amber Schroeder ("PA Schroeder") treated Mrs. Hartman, diagnosing her with "[c]hronic midline low back pain without sciatica." Mrs. Hartman had a history of back pain due to a "bulging disc," but her pain was "more severe" on this occasion. PA Schroeder administered Dilaudid and Valium to Mrs. Hartman, which appeared to resolve her pain. PA Schroeder discharged Mrs. Hartman with a prescription for hydrocodone-acetaminophen to manage future pain.

The following morning, Mrs. Hartman returned to the emergency department, this time by ambulance. PA Schroeder again diagnosed Mrs. Hartman with "[c]hronic midline low back pain without sciatica." PA Schroeder ordered an MRI, which revealed "disc protrusion/extrusion . . . exhibit[ing] mass effect on the descending right S1 nerve root." During this second visit, PA Schroeder administered two Dilaudid injections and also placed a transdermal fentanyl patch, which is marketed under the brand name Duragesic. PA Schroeder consulted with PMC's on-call pharmacist, Susan Wilson, who ultimately dispensed the patch. Mr. Hartman later testified in a deposition that, once the patch was placed on Mrs. Hartman, they "were told by the ER that [they] needed to get more [f]entanyl patches" from Mrs. Hartman's primary care physician. At the time, Mrs. Hartman was regularly taking escitalopram, a prescription antidepressant. On both of Mrs. Hartman's visits to the emergency department, PA Schroeder operated under the supervision of Dr. Willis Parmley, a board-certified emergency medicine physician who practices at PMC as an independent contractor through Rocky Mountain Physician Group, LLC ("RMPG").

Two days after her second visit to the emergency department, Mrs. Hartman was seen by Dr. Stephen Hansen, an orthopedic surgeon, at Idaho Sports and Spine. At that time, Mrs. Hartman was still wearing the fentanyl patch applied by PA Schroeder at PMC. Dr. Hansen observed that, despite the fentanyl patch, Mrs. Hartman was "still . . . doubled over in pain." He discussed options for surgical intervention with Mrs. Hartman, and she agreed to surgery. Mr. Hartman commented to Dr. Hansen that he thought the fentanyl patches were effectively managing his wife's pain and

3

that they "were told by the ER that [they] needed to get more [f]entanyl patches." Dr. Hansen prescribed Mrs. Hartman eight additional fifty-microgram (50 mcg) transdermal fentanyl patches to manage her pain until he could perform surgery.

Mr. Hartman testified that he operated under the belief, based on the "instructions from the manufacturer[,]" and instructions he received from "Amber [Schroeder] or a nurse" in the emergency department that a new patch needed to be applied to his wife every seventy-two hours. Mr. Hartman further testified that at 2:00 p.m. on November 20, he applied a new fentanyl patch— the first of the eight prescribed by Dr. Hansen—after removing the one PA Schroeder had applied in the emergency department. He also "put tape around the edges" of the new patch and wrote the date and time of application on its face. Mr. Hartman applied a new patch—the second of the eight prescribed by Dr. Hansen—on his wife's arm on November 23. Mrs. Hartman passed away in the early morning hours of November 25. Her death certificate lists "respiratory depression," "acute fentanyl intoxication," and "fentanyl overdose," as causes of death.

**B. Procedural Background**

In May 2021, Mr. Hartman and the Hartmans' children filed this suit, asserting medical malpractice claims against Dr. Parmley, PA Schroeder, and their medical group, RMPG (collectively the "Emergency Providers"); Dr. Hansen and Idaho Sports and Spine (collectively the "Orthopedic Surgeon"); Dr. Austin Meyers (Mrs. Hartman's primary care physician who has since been dismissed from this case); and PMC. They also brought claims for violations of Idaho's informed consent laws. The district court later allowed the Hartmans to amend their complaint to include an additional claim against PMC for the alleged negligence of its in-house pharmacist, Susan Wilson, based on her dispensing of the fentanyl patch administered to Mrs. Hartman by PA Schroeder.

In August and July 2021, the medical providers separately served their first discovery requests on the Hartmans, which requested that the Hartmans "identify each person [they] may call as an expert witness at the trial" and to "state the substance of their opinions on which the expert is expected to testify" in accordance with Idaho Rule of Civil Procedure 26(b)(4)(A)(i) and (ii). The Emergency Providers specifically requested that the Hartmans disclose any physician or other healthcare provider with whom their expert witnesses have consulted "to become familiar with the applicable local standard of health care practice for any provider in this case." The Hartmans declined to respond to these requests, instead assuring the Emergency Providers that

they would "supplement" their responses at a later date. The district court's scheduling order provided that the Hartmans had until January 19, 2023—or 180 days prior to trial—to disclose this information.

On January 19, 2023, the Hartmans disclosed out-of-state experts Paul McHale, M.D. (to speak to the care Dr. Parmley provided) and James Keller, P.A. (to speak to the care PA Schroeder provided), along with each expert's report. However, they again declined to disclose the non-testifying local standard-of-care experts on whom these experts relied upon to become familiar with the applicable standard of care in Pocatello. Instead, the Hartmans stated that they intended to "seek a protection order from the court under . . . [Rule 26(b)(4)(D)] from disclosing the information to [Defendants]." The same day, the Hartmans also disclosed an out-of-state expert, Frank Petkovich, M.D., who would address the care provided by Dr. Hansen, along with his report. But they similarly declined to disclose any non-testifying local standard-of-care experts on whom Dr. Petkovich may have relied. The Hartmans also disclosed causation experts John Wurpel, M.S., Ph.D., a pharmacologist, and Paul Uribe, M.D., a forensic pathologist, whose disclosures were not challenged.

About ten months later, in October 2023, the Hartmans moved the district court for a protection order approving their refusal to disclose the non-testifying local standard-of-care experts. The Hartmans' memorandum in support of the motion elaborated that their local standard-of-care experts requested the order out of "a serious concern of retribution in their employment, insurance premiums, and/or licensure with the Board of Medicine all because they were willing to discuss the standard of care with the plaintiffs' retained experts." A few days later, the Emergency Providers, citing Rules 16(e) and 37(c) of the Idaho Rules of Civil Procedure, moved to strike the Hartmans' liability experts based on their failure to disclose the non-testifying local standard-of care experts upon whom the expert witnesses relied in forming their opinions.

The district court considered the Hartmans' motion for a protective order and the Emergency Providers' motion to strike at a hearing in November 2023. With respect to the motion for a protective order, the district court denied that motion based on its perceived lack of "a factual basis" to support a finding of good cause. As to the motion to strike, the Hartmans argued that a local standard-of-care expert was not necessary because their experts relied on Dr. Parmley's deposition testimony in which "he outlined what the standard of care was." The Hartmans contended that Dr. Parmley, who was board certified in emergency medicine, testified during his

5

deposition that there was no difference in the standard of care in emergency medicine in Pocatello and nationally.

The Hartmans previously relied on this testimony in a motion for partial summary judgment in which they asked the court to affirmatively rule "that the plaintiff's expert can reply [sic] upon Defendant Willis Parmley's response in his deposition that there are no deviations in the standard of care in Pocatello, Idaho in 2019 as it applied to a board-certified emergency room physician." The district court declined to rule on that issue because, in its view, the Hartmans were improperly "asking [the] [c]ourt to rule on a foundational evidentiary issue through a summary judgment motion." The Hartmans re-presented this argument for the purposes of opposing the Emergency Providers' motion to strike, again arguing that they were not required to disclose their non-testifying local standard-of-care expert because their liability experts relied on the deposition testimony of Dr. Parmley to familiarize themselves with the local standard of care:

> Defendant Parmley's own statements can be used by the plaintiffs' expert, and in deed [sic], were used by the expert to help determine the standard of care. *Dlouhy v. Kootenai Hosp. Dist.*, 167 Idaho 639, 474 P.3d 711 (2020). Regardless if the [sic] Dr. McHale's report doesn't identify the local consultant, "an affidavit that fails to identify an anonymous consultant does not categorically fail to comply with the foundation requirements for admissibility of an out-of-area expert's testimony under Idaho Code section 6-1013." *Bybee v. Gorman*, 157 Idaho 169, 178, 157 P.3d 14, 23 (2014). As such, the failure of the Plaintiffs' expert regarding the statement of the local consultant's identity, by itself, required [sic] at this point of the case as it pertains to Defendant Parmley. Defendants know this to be the case, but they are seeking to obtain a sanction without supporting the requirements to support such a severe sanction.

The district court took the motion to strike under advisement in order "to take a closer look at" whether the "drastic remedy to strike a witness" was warranted in this case. Immediately after the hearing, the Hartmans filed notice with the district court that they had disclosed the identity and contact information of their non-testifying local standard-of-care experts.

The district court subsequently issued an order granting the Emergency Providers' motion to strike the Hartmans' liability experts pursuant to Rules 16(e) and 37(c) of the Idaho Rules of Civil Procedure. In doing so, the district court noted that the parties stipulated to the scheduling order, and that the order adopting their stipulated schedule required the Hartmans to disclose their non-testifying local standard-of-care experts by January 19, 2023 (180 days prior to trial). The district court also found that because the disclosure of the Hartmans' non-testifying local standard-of-care experts was required by the Idaho Rules of Civil Procedure, the Hartman's disclosures

6

were "incomplete" under the rules. Significantly, the district court also found the Hartmans intentionally failed to timely disclose this information.

Following the district court's decision to grant the Emergency Providers' motion to strike, Dr. Hansen (the orthopedic surgeon) followed suit and moved to strike the Hartmans' liability expert, Dr. Petkovich, who sought to testify about the care Dr. Hansen provided to Mrs. Hartman. The district court granted this motion on the same grounds, namely, the Hartmans' intentional failure to timely and completely disclose the identity of the non-testifying local standard-of-care expert in accordance with the scheduling order and the Idaho Rules of Civil Procedure. Although the Hartmans moved the district court to reconsider both orders, the district court denied their motions, stating "[o]nce again the [c]ourt concludes that it must treat Plaintiffs' evasive and incomplete discovery response and expert witness disclosure as failure to respond to discovery or to disclose under the Amended Scheduling Order."

After granting the two motions to strike, the district court proceeded to rule on two summary judgment motions. The first, advanced by the Emergency Providers and joined by PMC, contended that the testimony of Dr. Wurpel and Dr. Uribe, the Hartmans' causation experts, was inadmissible; therefore, it could not create a genuine issue of material fact that "the single 72-hour [f]entanyl patch ordered by PA Schroeder on November 17, 2019," was the proximate or actual cause of Mrs. Hartman's death several days later. The second motion, brought by the Emergency Providers and the Orthopedic Surgeon, contended that the striking of the Hartmans' liability experts as a sanction for the discovery violations was fatal to their medical malpractice and informed consent claims. The district court granted both motions.

As to the first motion for summary judgment concerning causation, the district court agreed that the Hartmans "have offered no expert testimony that raises a genuine issue of material fact concerning whether the single [f]entanyl patch prescribed and administered by [the Emergency Providers] on November 17, 2019, proximately caused or contributed to Mrs. Hartman's accidental [f]entanyl overdose and her resulting death."

On the second summary judgment motion, the district court ruled that the Hartmans had "failed to frame a genuine issue of material fact as to their medical malpractice and informed consent claims" because they could not offer admissible expert testimony showing that these providers "breached the applicable community standards of health care when treating Mrs. Hartman or in obtaining her informed consent." The district court dismissed all the Hartmans'

claims, except for the informed consent claim against PMC, because PMC had not yet moved for summary judgment on that claim.

The Hartmans filed a timely notice of appeal. The district court subsequently entered an amended judgment, certifying the judgment as final in accordance with Idaho Rule of Civil Procedure 54(b)(1). The district court stayed adjudication of the informed consent claim during the pendency of this appeal.

## II. STANDARDS OF REVIEW

The imposition of sanctions for a party's violation of the rules of discovery is committed to the district court's discretion. *Gem State Roofing, Inc. v. United Components, Inc.*, 168 Idaho 820, 830, 488 P.3d 488, 498 (2021) (citing *State Ins. Fund v. Jarolimek*, 139 Idaho 137, 138, 75 P.3d 191, 192 (2003)). This Court reviews a district court's decision to impose sanctions to determine whether it is supported by substantial and competent evidence and whether the court otherwise abused its discretion. *Id.* (citing *Easterling v. Kendall*, 159 Idaho 902, 909, 367 P.3d 1214, 1221 (2016)).

Accordingly, we review a district court's decision to impose discovery sanctions under a four-part inquiry, which considers "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3 187, 194 (2018) (citations omitted).

Next, Rule 56 of the Idaho Rules of Civil Procedure allows for a grant of summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "When considering whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012) (citation omitted). To establish that a genuine dispute of material fact exists, a party must present evidence upon which a jury could reasonably rely; a "mere scintilla of evidence or merely casting a slight doubt of the facts" will not suffice. *Id.* (citation omitted). We review a district court's grant of a motion for summary judgment under "the same standard of review used by the district court originally ruling on the motion." *Id.* (citation omitted).

### III. ANALYSIS

**A. The district court did not abuse its discretion by striking the Hartmans' expert witness testimony.**

The Hartmans insist that the dispositive issue in their appeal of the district court's ruling on the motions to strike is whether their expert witnesses could rely on the deposition testimony of the defendant medical providers to obtain actual knowledge of the local standard of care. In their view, the district court erred by focusing exclusively "on the undisclosed identities of [their] consultants." And because those local consultants were not "the primary basis through which their experts familiarized themselves" with the local standard of care, the Hartmans maintain that their discovery and scheduling violations should not have been "controlling" when the district court ruled on the motions to strike.

The Defendants take the opposite position. They assert that the district court struck the Hartmans' experts as a sanction for failing to comply with their discovery obligations and the expert-disclosure requirements of the scheduling order. In their view, the disclosures omitted crucial information about the bases of the experts' opinions, even when those opinions relied, in whole or in part, on non-testifying local standard-of-care experts.

We conclude that the district court did not abuse its discretion in striking the Hartmans' expert witnesses under the Idaho Rules of Civil Procedure. At bottom, this issue concerns a discovery dispute, not the admissibility of expert testimony. At least two of the Hartmans' experts relied on non-testifying local standard-of-care experts to familiarize themselves with the applicable standard of care for prescribing narcotics in Pocatello at the time of Mrs. Hartman's treatment. Whether those consultants were the primary or secondary source informing the testifying experts' opinions is immaterial. The Idaho Rules of Civil Procedure require disclosure of the identity of these non-testifying experts regardless of the extent to which they informed the experts' opinions. And when that obligation is disregarded, the district court is authorized to impose sanctions, including the striking of those experts, even if that decision will ultimately result in the failure of a plaintiff's case. Accordingly, we affirm the district court's decision to do so in this case.

Like its federal analogue, the discovery procedures of Rule 26 of the Idaho Rules of Civil Procedure are intended to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). The universe of discoverable "matter" extends to "any nonprivileged matter that is relevant to any

party's claim or defense, including . . . the identity and location of persons who know of any discoverable matter." I.R.C.P. 26(b)(1)(A).

When a party intends to offer expert testimony, Rule 26 permits the opposing party to obtain, through an interrogatory, the expert's identity and specified information related to the anticipated testimony, including the "basis and reasons" for the expert's opinion and any "data or other information" the expert considered. I.R.C.P. 26(b)(4)(A)(i); *see Lands v. Sunset Manor, LP*, 173 Idaho 658, 668, 546 P.3d 670, 680 (2024). In a medical malpractice action, Rule 26(b)(4)(A)(i) requires the plaintiff to disclose "the names of any non-testifying medical experts who provide information concerning the local standard of care." *Quigley v. Kemp*, 162 Idaho 408, 412, 398 P.3d 141, 145 (2017). A party cannot avoid this obligation simply because their expert witness did not primarily rely on the non-testifying local standard of care expert to become acquainted with the local standard of care. The plain language of Rule 26(b)(4)(A)(i) draws no such distinction. Rather, when a testifying expert relies, to any degree, on consultation with a local standard-of-care expert, the identity of that expert must be disclosed as part of both the "basis and reasons" for the opinion and the "data and information" considered. *See Quigley*, 162 Idaho at 412, 398 P.3d at 145.

Rule 37 provides district courts with the enforcement mechanisms necessary to effectuate this Court's "admonition that discovery should not be a game played by lawyers." *Gem State Roofing, Inc. v. United Components, Inc.*, 168 Idaho 820, 829, 488 P.3d 488, 497 (2021). Ordinarily, trial courts will exercise their Rule 37 authority to sanction parties that unjustifiably resist discovery requests, but the ultimate decision to do so is discretionary. *State Ins. Fund v. Jarolimek*, 139 Idaho 137, 138–39, 75 P.3d 191, 192–93 (2003). When a party's resistance takes the form of a failure to disclose or to supplement a disclosure under the trial court's scheduling order, Rule 37 provides that the offending party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." I.R.C.P. 37(c)(1). Alternatively, the trial court may impose more severe sanctions "on motion and after giving an opportunity to be heard," including staying further proceedings until compliance is achieved, dismissing the action in whole or in part, or entering a default judgment against the offending party. I.R.C.P. 37(c)(1)(B), (b)(2)(A)(iv)–(vi).

Finally, Rule 16 empowers the trial court to "establish[] timetables by which the case should proceed." *See* 6A *Wright & Miller's Federal Practice & Procedure* § 1522.1 (3d ed. 2025) (discussing Fed. R. Civ. P. 16). In particular, the trial court may set deadlines for completing

discovery, including the disclosure of expert witnesses. I.R.C.P. 16(a)(2)(B). When a party fails to comply with these deadlines, the district court may impose sanctions. I.R.C.P. 16(e). These sanctions may include any of those listed in Rule 37(b)(2)(A) or any other sanction the court deems appropriate. I.R.C.P. 16(e)(2) ("The court may make such orders as are just, and may, along with any other sanction, make any of the orders allowed under Rule 37(b)(2)(A).").

In this case, the district court's scheduling order required the Hartmans to disclose their expert witnesses under Rule 26(b)(4) by January 19, 2023:

> 1. 180 days prior to trial, plaintiffs shall disclose each person plaintiffs intend to call as an expert witness at trial, the subject matter on which the expert is expected to testify and all information required by Rule 26(b)(4) of the Idaho Rules of Civil Procedure.

In July 2021, the Orthopedic Surgeon requested, via interrogatory, that the Hartmans identify their expert witnesses and provide the information incident to their testimony required by Rule 26(b)(4)(A)(i) and (ii). The Emergency Providers made the same request the following month, specifically requesting that the Hartmans disclose any physician or other healthcare provider with whom their expert witnesses have consulted "to become familiar with the applicable local standard of health care practice for any provider in this case."

The Hartmans responded in December 2021 that they would provide a supplementary response with the information requested "upon completion of their expert reviews and reports." On January 19, 2023—the deadline for expert witness disclosure—the Hartmans disclosed their experts: Dr. McHale (who would testify about Parmley's breach of standard of care), PA Keller (who would testify about PA Schroeder's breach of standard of care), and Dr. Petkovich (who would testify about Dr. Hansen's breach of standard of care). Each of these experts reside and practice medicine outside of Idaho. The Hartmans did not disclose the identities of their non-testifying local experts who consulted with these out-of-state experts; instead, they notified the Defendants that they would seek a protective order to avoid doing so.

The district court found that the Hartmans intentionally omitted "information particular to the identification of [their] local consulting experts," in violation of both the court's scheduling order and Rule 26(b)(4)(A)(i). The district court further found that their omission had no "substantial justification," and that the consequences of the incomplete disclosure prejudiced the Emergency Providers and Orthopedic Surgeon. Relying on Rules 16(e) and 37(c), the district court

11

struck the testimony of Dr. McHale, PA Keller, and Dr. Petkovich as a sanction for the Hartmans' failure to comply with the discovery rules and scheduling order.

Perceiving the matter before it as a Rule 26 violation, the district court acted within its discretion and consistent with the enforcement tools granted by Rules 16 and 37. To begin, the Hartmans had no legal basis upon which to refuse to disclose the identity of the non-testifying local standard-of-care experts—the district court found their motion for a protective order entirely without merit, and it rightfully dismissed the Hartmans' contention that the Defendants' motions to strike should have been preceded by motions to compel. *See Clark v. Klein*, 137 Idaho 154, 158 n.1, 45 P.3d 810, 814 n.1 (2002) (holding that "the district court abused its discretion in indicating that a motion to compel is required by the party seeking exclusion of an expert witness for noncompliance with Rule 26").

On appeal, the Hartmans advance a novel argument challenging the district court's ruling on the Defendants' motions to strike:

> The District Court should not have focused solely on the undisclosed identities of the Hartmans' consultants, as that ignored the primary basis through which their experts familiarized themselves in the matter. Any non-disclosure of consultants should have been a secondary consideration; it certainly should not have been controlling when it came to familiarization through review of transcripts.

Put differently, the Hartmans contend that, because their experts primarily relied on the Defendants' deposition testimony to familiarize themselves with the local standard of care, they had no obligation under Rule 26(b)(4)(A)(i) to disclose the identities of their non-testifying local standard-of-care experts, who purportedly provided only secondary information on the local standard of care. This argument contradicts the plain language of Rule 26. Nowhere does the rule distinguish between primary and secondary "bas[es]," "reasons," "data," or "other information," let alone excuse disclosure based on the degree to which a testifying expert relies on them in forming an opinion. To the contrary, Rule 26(b)(4)(A)(i) imposes a broad mandate: it requires "a complete statement of *all* opinions to be expressed and the basis and reasons for the opinion" and "the data or other information considered by the witness in forming the opinions[.]" I.R.C.P. 26(b)(4)(A)(i) (emphasis added). The repeated use of the definite article in these commands confirms that both "*the* basis and reasons" and "*the* data or other information" extends to all such information, regardless of its relative weight in supporting the expert's opinion. Consistent with this language, we decline to find that the district court abused its discretion by refusing to consider

whether the Hartmans' local experts were the primary or secondary source of information regarding the local standard of care in evaluating the propriety of discovery sanctions.

The Hartmans further attempt to obscure their disclosure obligations by relying on *Phillips v. Eastern Idaho Health Services., Inc.*, 166 Idaho 731, 463 P.3d 365 (2020). There, we held that "the identity of local consulting physicians is discoverable under [Rule] 26(b)(1)(A)'s general scope of discovery." *Id.* at 745, 463 P.3d at 379. The Hartmans interpret this statement to mean that *Phillips* "take[s] the disclosure of local consultants . . . outside the realm of mandatory expert disclosures under [Rule] 26(b)(4)(A)(i), or scheduling order violations under [Rule] 16, and puts it squarely in the realm of ordinary fact discovery." Under that reading, the Hartmans contend that the eventual disclosure of their local consultants complied with the more generous deadline applicable to "general supplementation under the Scheduling Order," and that the district court erred in imposing sanctions pursuant to Rules 16 and 37, following the example of *Easterling v. Kendall*, 159 Idaho 902, 367 P.3d 1214 (2016) (affirming the district court's imposition of Rule 37 sanctions against plaintiff who failed to timely and sufficiently disclose expert witness in accordance with scheduling order and Rule 26(b)(4)(A)).

The Hartmans' argument misapprehends this Court's caselaw regarding a medical-malpractice plaintiff's disclosure obligations under Rule 26(b)(4)(A). For starters, the statement in *Phillips* that "the identity of local consulting physicians is discoverable under [Rule] 26(b)(1)(A)'s general scope of discovery" derives from *Quigley*, which should have been the Hartmans' starting point. In *Phillips*, this Court considered whether the plaintiff in a medical-malpractice action could depose a local consultant. 166 Idaho at 745, 463 P.3d at 379. By contrast, *Quigley* addressed the more directly relevant question of whether Rule 26(b)(4)(B) protects the identity of a non-testifying local standard of care expert in a medical malpractice action and held that it did not. 162 Idaho at 410, 398 P.3d at 143.

In *Phillips*, we held, consistent with Rule 26(b)(4)(D)(ii), that a non-testifying local standard of care expert cannot be deposed absent "a showing of exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." 166 Idaho at 746, 463 P.3d at 380 (citation modified) (quoting I.R.C.P. 26(b)(4)(D)(ii)). In reaching that holding, the Court relied on a fragment of the holding in *Quigley* to clarify that, while a local consultant may not be deposed absent exceptional circumstances, their identity remains discoverable under Rule 26(b)(1)(A). *Id.* at 745–46, 463 P.3d at 379–80. But *Phillips*

13

omitted an equally important—though less relevant to the deposition issue in that case—holding in *Quigley* regarding the role of a local expert in the formation of a testifying expert's opinion:

> Our discovery rules require a testifying witness to disclose the basis and reasons for all opinions and all of the data and information considered by the witness in forming the opinions. *See* I.R.C.P. 26(b)(4)(A)(i) (2015). This requirement fairly encompasses the names of any non-testifying medical experts who provide information concerning the local standard of care.

*Quigley*, 162 Idaho at 412, 398 P.3d at 145.

The Hartmans attempt to read *Quigley* through *Phillips* to evade this important rule. But a more careful reading of *Quigley* instructs that the identity of a non-testifying local expert is *both* discoverable as a general matter under Rule 26(b)(1)(A) and subject to the disclosure requirements of Rule 26(b)(4)(A)(i) because they provide important input into the formation of the testifying expert witness's opinion. *Quigley*, 162 Idaho at 412, 398 P.3d at 145. *Phillips*, addressing an entirely unrelated question, does not change the dual nature of our holding in *Quigley*; the Hartmans were required to disclose the identity of their non-testifying local experts. Accordingly, the district court had reason to follow the example of *Easterling* in striking the expert testimony in light of the Hartmans' violations of Rule 26(b)(4) and the deadlines set forth in the district court's scheduling order. The Hartmans' reading of *Quigley*, filtered through *Phillips*, does not alter this conclusion.

Next, the Hartmans rely on *Bybee v. Gorman*, 157 Idaho 169, 335 P.3d 14 (2014), to suggest that the district court erred in striking their expert testimony because "the failure of a party to identify their testifying expert's local consultants is not fatal to the admissibility of the proposed expert's testimony." But the present case has little to do with admissibility and everything to do with the rules of discovery. While *Bybee* may have held that "an affidavit that fails to identify an anonymous consultant does not categorically fail to comply with the foundation requirements for admissibility of an out-of-area expert's testimony under Idaho Code section 6–1013," it says nothing about a district court's authority to exclude testimony as a sanction for a party's violations of discovery rules. *Id.* at 178, 335 P.3d at 23. Put simply, *Bybee* is inapt.

Lastly, the Hartmans made a last-ditch effort at oral argument to excuse their failure to timely disclose local consultants by citing language in the second stipulated scheduling order stating: "The parties agree plaintiffs have fully disclosed their standard of care experts." The Hartmans contend this language relieved them of their obligation to disclose the identity of their non-testifying local standard-of-care experts in accordance with Rule 26(b)(4)(A)(i). We decline

to consider this argument because it appears to have been raised only briefly at a January 8, 2024, hearing before the district court and it was not addressed at all in the Hartmans' opening or reply briefs on appeal to this Court. Therefore, the Defendants were deprived of a meaningful opportunity on appeal to respond with their own explanation of the stipulated language's meaning or intended effect. *See Hickman v. Boomers, LLC*, 174 Idaho 1048, 1058 n.1, 554 P.3d 99, 109 n.1 (2024) ("Additional issues raised for the first time on appeal at oral argument are not properly before this Court." (citation modified)).

We conclude that the district court did not abuse its discretion in striking the Hartmans' expert testimony. The Hartmans failed to disclose the identity of the non-testifying local standard-of-care experts on whom Dr. McHale, PA Keller, and Dr. Petkovich relied, at least in part, to familiarize themselves with the local standard of care relevant to Mrs. Hartman's treatment in Pocatello. Because that information was pertinent to the formation of those three experts' opinions, the Hartmans were obliged to disclose the local experts' identity as required by Rule 26(b)(4) and *Quigley*. The district court found their non-disclosure to be intentional, prejudicial to the Emergency Providers and the Orthopedic Surgeon, and lacking substantial justification. Those conclusions were supported by substantial and competent evidence in the record.

In sum, the district court correctly treated the issue presented here as a discovery violation, the remedy for which is entrusted to its discretion. It acted well within the boundaries of its discretion by excluding the untimely disclosed expert witnesses under Rule 37(c)(1), even though, as explained below, it necessarily resulted in summary judgment being granted in favor of the Emergency Providers and the Orthopedic Surgeon. In fact, harsher sanctions, such as outright dismissal, were legitimate options. I.R.C.P. 37(c)(1)(B), (b)(2)(A)(i)–(vi). Thus, the district court's decision was fully consistent with the applicable legal standards furnished by the Idaho Rules of Civil Procedure. Finally, the district court carefully considered the procedural history of the case, the Hartmans' repeated refusal to comply with discovery rules, the Defendants' inability to access discoverable information regarding the Hartmans' local experts, and the absence of satisfactory justification for their conduct. These factors led the district court to select the sanction it did, a decision plainly grounded in reason.

Accordingly, we affirm the district court's orders granting the Defendants' motions to strike the expert testimony of Dr. McHale, PA Keller, and Dr. Petkovich. Because the exclusion of these witnesses led the district court to grant the Defendants' subsequent motions for summary

judgment, we also affirm the district court's substitute decision and order granting those motions and dismissing Counts I, III, V, and VII of the Hartmans' amended complaint as against PA Schroeder, Dr. Parmley, and RMPG, and dismissing Counts IV, V, and VII as against Dr. Hansen and Idaho Sports and Spine.

**B.** **The district court erred in granting summary judgment on causation.**

Separately, the Hartmans challenge the district court's grant of a renewed motion for summary judgment filed by the Emergency Providers and joined by the Orthopedic Surgeon and PMC. The district court granted the renewed motion for summary judgment based on its conclusion that the testimony of the Hartmans' causation experts failed to raise a genuine dispute of material fact as to whether the Defendants actually and proximately caused Mrs. Hartman's death. The Hartmans contend that the conflicting opinions of their experts, Drs. Wurpel and Uribe, and the defense expert, Dr. Olyaei, created a classic factual dispute appropriate for jury resolution. They further argue that the district court improperly imposed "an impossible causation standard" by requiring them to prove that "molecules from the first fentanyl patch would have been in Mrs. Hartman's system at the time of her death." We agree. The district court's treatment of both actual and proximate causation departs from the legal standards articulated by this Court.

Proximate cause consists of two elements: cause in fact and scope of legal responsibility or "true proximate cause." *Newberry v. Martens*, 142 Idaho 284, 288, 127 P.3d 187, 191 (2005) (citations omitted). "Actual cause" implicates "the factual question of whether a particular event produced a particular consequence." *Id.* (citation omitted). On the other hand, true proximate cause—sometimes called "legal cause"—considers the normative question "of whether responsibility will be extended to the consequences of conduct which has occurred." *Id.* (citation omitted). In other words, actual cause asks whether the defendant's negligence harmed the plaintiff as a matter of fact, while "true proximate cause" or "legal cause" asks whether "liability for that conduct attaches." *Id.* (citation omitted).

In an actual-cause analysis, "the 'but for' test may be employed when there is a single possible cause of the injury." *Garcia v. Windley*, 144 Idaho 539, 543, 164 P.3d 819, 823 (2007). The formulation of the but-for test is well known in the law of torts: "the defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it." W. Page Keeton et al., Prosser & Keeton on Torts § 41, at 266 (5th ed. 1984) (footnote omitted).

16

However, the "but-for" test is not the relevant inquiry when "there is evidence of two or more possible causes of the plaintiff's injury." *Newberry*, 142 Idaho at 288, 127 P.3d at 191. The reasons for adopting a different rule in such cases are intuitive:

> In such cases it is quite clear that each cause has in fact played so important a part in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all.

Keeton et al., *supra*, § 41, at 267 (footnote omitted). Thus, when confronted with more than one tortious actor, we look to the "substantial factor" test, which asks whether the defendant's conduct was a substantial factor in causing the plaintiff harm. *Fussell v. St. Clair*, 120 Idaho 591, 595, 818 P.2d 295, 299 (1991).

If a specific defendant's conduct is a substantial factor in bringing about the plaintiff's injuries, the question under a "true proximate cause" or "legal cause" analysis becomes whether a reasonable person would take that risk of harm to the plaintiff into account in guiding reasonable conduct. *Orthman v. Idaho Power Co.* (*Orthman II*), 130 Idaho 597, 601, 944 P.2d 1360, 1364 (1997) (discussing *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 300–01, 796 P.2d 506, 509–10 (1990)). While *Orthman II* addresses the scope of the defendant's legal duty, the foreseeability inquiry in duty and proximate cause is the same: both ask whether the defendant's conduct created a foreseeable risk of harm to the plaintiff. Keeton et al., *supra*, § 42, at 274–75. The difference lies only in the stage of the negligence analysis at which the inquiry is applied—duty as a threshold question, and proximate cause as a limitation on liability. *See id.*

To its credit, the district court identified the substantial factor test as the relevant actual cause standard, the correct inquiry given that this case involves the alleged tortious conduct of more than one medical provider over the course of several days. Yet as a practical matter, the district court appears to hold the Hartmans to the but-for test. It relies on the testimony of defense expert Dr. Olyaei, a pharmacologist, who opined, as summarized by the district court:

> (1) that the [f]entanyl from the first patch administered to Mrs. Hartman by Rocky Mountain on November 17, 2019, would almost completely [have] been out of her system 48 hours after placement on her body and completely out of her system around the time that patch was removed by Mr. Hartman on November 20, 2019; (2) that there is no conceivable way that any [f]entanyl from the first patch administered to Mrs. Hartman by Rocky Mountain on November 17, 2019, would have remained in her system at the time of her death on November 25, 2019; and

17

(3) that the first [f]entanyl patch administered to Mrs. Hartman by Rocky Mountain on November 17, 2019, did not cause or contribute to Mrs. Hartman's death.

At the same time, the district court acknowledged that Dr. Olyaei's opinions are disputed by the Hartmans' expert, Dr. Wurpel:

> Because Dr. Olyaei is relying upon the one fentanyl patch is basing her opinion on the one patch [sic] being administered in the hospital, the conclusion is incorrect because Ms. Hartman did not have only have [sic] fentanyl patch prescribed to her in this case. Additional patches were prescribed and administered. Based upon the medical records and discovery I have reviewed, I conclude that the fentanyl patches were changed every 72-hours as prescribed. Because two additional 50-mcg patches were administered to Ms. Hartman (one on November 20, 2019 and the last one on November 23, 2019), there is no possible way to determine when the fentanyl in the patch administered on November 17, 2019 left Ms. Hartman's system entirely. This is because the fentanyl continues to circulate throughout the system even after it is removed, and as an additional fentanyl patch is added, there is no possible way to trace each molecule of the fentanyl released by any one patch. It is only after all fentanyl patches are discontinued completely that calculations to determine when the remaining fentanyl will leave the body's circulatory system. Such was not possible in this case because Ms. Hartman passed away prior to the third fentanyl patch being removed.

Despite this conflicting expert testimony, the district court concluded that the Hartmans had failed to meet their burden to defeat summary judgment because, in its view, they were unable "to frame a genuine issue of material fact for a jury to determine whether or not the first fentanyl patch administered to Mrs. Hartman by [Emergency Providers] on November 17, 2019, caused or contributed to her accidental death."

The district court's reasoning conflates substantial-factor causation with proof that the specific pharmacokinetic mechanism (residual molecules from the first patch) persisted until death. By making the presence of molecules from the patch dispensed and administered in the emergency department the dispositive criterion, the district court effectively required the Hartmans to prove that, but for the lingering fentanyl from that patch, the overdose would not have occurred. That is the hallmark of a but-for test, not a substantial-factor analysis appropriate in multiple-cause cases. Applying the substantial-factor test, the district court should have asked whether the dispensing and administration of the initial fentanyl patch in the emergency department was a substantial factor in Mrs. Hartman's overdose by materially contributing to her overall fentanyl intake or heightened risk of overdose. This inquiry does not require proof that fentanyl from the first patch remained in her bloodstream at the moment of her death. *Cf. Ballard v. Kerr*, 160 Idaho

674, 692, 378 P.3d 464, 482 (2016) (holding that requiring a plaintiff to conclusively trace lethal bacteria to specific surgical instruments would be "asking for the impossible").

We conclude that Dr. Wurpel's contentions were sufficient to rebut the assertion on summary judgment that there is no genuine dispute of material fact that the Emergency Providers and PMC were not the actual cause of Mrs. Hartman's death. Under the substantial factor test, it is fair to say that reasonable minds could differ as to whether the Emergency Providers and PMC actually caused Mrs. Hartman's death based on the competing expert testimony in the record. These Defendants played a role in introducing fentanyl to Mrs. Hartman and it would be contrary to the policy of Idaho tort law to allow the Emergency Providers and PMC to evade liability simply by pointing to the Orthopedic Surgeon's prescription of additional patches subsequent to their own treatment of Mrs. Hartman. In sum, the Hartmans are entitled to have a jury decide the question of actual causation, not the district court on a summary judgment motion. *Cramer v. Slater*, 146 Idaho 868, 876, 204 P.3d 508, 516 (2009) (reversing grant of summary judgment on causation because "[r]easonable minds could differ as to whether" the defendant's negligence caused the plaintiff harm).

For similar reasons, we also find error in the district court's conclusion that the Hartmans failed to rebut the Defendants' contention on summary judgment that no genuine dispute of material fact existed as to whether Mrs. Hartman's death was a foreseeable consequence of the first fentanyl patch administered at PMC. As previously noted, proximate cause requires assessing whether legal responsibility ought to reach the consequences of a defendant's conduct—whether, as a matter of policy, those consequences are ones for which the law will impose liability. *Id.* at 875, 204 P.3d at 515 (citation omitted).

Generally, liability will attach when the harm the tortfeasor actually caused is a "consequence[] within the scope of the original risk, so that the likelihood of [its] occurrence was a factor in making the defendant negligent in the first instance." Keeton et al., *supra*, § 43, at 283; *accord Sharp*, 118 Idaho at 301, 796 P.2d at 510 ("[F]oreseeability is not to be measured by just what is more probable than not, but also includes whatever result is likely enough in the setting of modern life that a reasonably prudent person would take such into account in guiding reasonable conduct."). Proximate cause is typically a question entrusted to the jury when the facts and circumstances of the particular case are such that reasonable minds could differ. *Cramer*, 146 Idaho at 875, 204 P.3d at 515 (citation omitted).

Importantly, foreseeability in the proximate cause context concerns a "general risk of harm," not a "specific mechanism of injury." *Sharp*, 118 Idaho at 301, 796 P.2d at 510 (collecting cases); *Orthman II*, 130 Idaho at 601, 944 P.2d at 1364. In *Orthman II*, a customer of Idaho Power attempted to manually restore power to his home after the company terminated electrical service for non-payment. 130 Idaho at 598–99, 944 P.2d at 1361–62. He did so by inserting "a long section of metal irrigation pipe" with a "hook shaped piece of metal rod" on the end into an "eyelet" on an elevated switch, presumably on a utility pole outside the home. *Id.* at 599, 944 P.2d at 1362. The customer was electrocuted and seriously injured when the pipe made contact with the eyelet. *See id.* He sued Idaho Power for negligence, alleging the company breached its duties to maintain, care for, and control its distribution lines, and failed to warn of known dangers or properly disconnect the power. *Orthman v. Idaho Power Co.* (*Orthman I*), 126 Idaho 960, 961, 895 P.2d 561, 562 (1995). The district court granted summary judgment to Idaho Power on proximate cause, relying on evidence that the company could not "have foreseen that [the plaintiff] might try to reconnect the electrical service." *Orthman II*, 130 Idaho at 601, 944 P.2d at 1364.

This Court reversed. *Id.* We held that the district court erred because Idaho Power's showing addressed only "the specific mechanism" of the customer's injury, rather than the general risk of harm created by the allegedly negligent maintenance of the power lines and failure to warn. *Id.* In other words, the district court imposed an unduly narrow evidentiary burden. Because Idaho Power's evidence spoke only to the foreseeability of the plaintiff's specific act—the precise manner of reconnection—rather than the general risk posed by its own conduct, a genuine dispute of material fact remained. *See id.*

The same error occurred here. In the district court's view, to defeat summary judgment on causation, the Hartmans had to show "that the single 50-mcg [f]entanyl patch ordered and administered to Mrs. Hartman by [Emergency Providers] on November 17, 2019 was the legal . . . cause of her death." And because the Hartmans could not controvert Dr. Olyaei's testimony that "there would be no [f]entanyl in Mrs. Hartman's system from the patch prescribed and administered by [Emergency Providers] after three days," those defendants were entitled to summary judgment. Thus, the district court defined the Hartmans' evidentiary burden too narrowly, just as the trial court did in *Orthman*. Specifically, the district court defined foreseeability by focusing on the expected duration of the fentanyl from the initial patch—the one dispensed by PMC pharmacist Susan Wilson and applied by PA Schroeder—citing expert

testimony that its effects would have dissipated after three days. It reasoned that because the molecules from the first patch were likely gone by day three, it was not foreseeable that the first patch could have contributed to Mrs. Hartman's death on day eight. This focus on the foreseeability of a specific pharmacokinetic mechanism is inconsistent with *Orthman II*.

*Orthman II* instructs that the Hartmans needed only to establish the general risk of harm presented by the allegedly negligent dispensing and administration of the first fentanyl patch. Put differently, to show a genuine dispute of material fact on foreseeability, the Hartmans were not required to prove that it was foreseeable that particular molecules of fentanyl would remain in Mrs. Hartman's system at the time of her death. Instead, the correct inquiry is whether dispensing and administering a potent opioid to a person taking an antidepressant created a general risk of opioid-related harm that a reasonable medical provider should have foreseen. This inquiry does not depend on the exact pharmacokinetic mechanism or the precise sequence of subsequent dosing decisions by other providers.

Applying this standard, we note the absence of any evidence offered by the Emergency Providers or PMC showing that their providers could not have foreseen the general risk of fatal harm created by dispensing and administering a fifty-microgram fentanyl patch to Mrs. Hartman. *Cf. Orthman II*, 130 Idaho at 601, 944 P.2d at 1364 (reversing summary judgment because Idaho Power failed to offer evidence demonstrating it "could not have foreseen that the disconnected electrical power source created a general risk of harm"). The evidence these Defendants did offer addressed only their asserted inability to foresee whether molecules from the patch they dispensed and administered would remain in Mrs. Hartman at the time of her death. On this record, the foreseeability of Mrs. Hartman's death remains a disputed fact—one properly reserved for the jury, not resolved on summary judgment. We therefore reverse the district court's summary judgment order.

We note that, since we have affirmed the district court's grant of summary judgment in favor of the Emergency Providers because the Hartmans' expert witnesses were stricken, the reversal of the district court's summary judgment order on causation will only result in vacating the amended judgment in part. The case will be remanded so that the Hartmans can proceed with Count II of their amended complaint against PMC based on the alleged negligence of the hospital's in-house pharmacist. We also remand with instructions to the district court to dismiss Count V of the amended complaint (lack of informed consent) based on the Hartmans' express concession in

their opening brief that they do not seek a remand for further proceedings on the informed consent claim.

**C. We award partial attorney fees against the Hartmans because their appeal of the district court's grant of the Defendants' motions to strike was pursued frivolously, unreasonably, and without foundation.**

All of the parties request an award of attorney fees. This Court may award reasonable attorney fees to the prevailing party upon finding that "the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. "Apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Idaho Mil. Hist. Soc'y, Inc. v. Maslen*, 156 Idaho 624, 632, 329 P.3d 1072, 1080 (2014).

We conclude that the Hartmans' appeal from the district court's order striking the testimony of Dr. McHale, PA Keller, and Dr. Petkovich was frivolous, unreasonable, and without foundation. On appeal, counsel advances several excuses for failing to timely and fully disclose the identities of the local consultants on whom these testifying experts relied to become familiar with the local standard of care. Counsel asserts that our decision in *Phillips v. Eastern Idaho Health Services, Inc.*, 166 Idaho 731, 463 P.3d 365 (2020)—a case largely irrelevant to the facts here— somehow altered our holding in *Quigley v. Kemp*, 162 Idaho 408, 398 P.3d 141 (2017), thereby excusing the non-disclosure. Counsel similarly relies on *Bybee v. Gorman*, 157 Idaho 169, 335 P.3d 14 (2014), but, like *Phillips*, *Bybee* says nothing about a medical-malpractice plaintiff's expert witness disclosure obligations. Counsel also claims that Rule 26 of the Idaho Rules of Civil Procedure does not require disclosure of local consultants when they are something less than a primary source of information regarding the local standard of care. We have never articulated such a rule, which would be inconsistent with the plain language of Rule 26.

Accordingly, we conclude that the Hartmans' appeal of the district court's orders striking their expert witnesses as a discovery sanction was frivolous, unreasonable, and without foundation, and we apportion an award of attorney fees for the Emergency Providers' and Orthopedic Surgeon's defense against that single claim on appeal.

## IV. CONCLUSION

Based on the foregoing reasoning and authorities, we vacate in part the Amended Judgment filed on October 28, 2024, as to PMC; we affirm in part the Amended Judgment as to the other Respondents. Furthermore, we reverse the district court's April 8, 2024, entry of summary

judgment to the extent it resulted in the dismissal of Count II against PMC. We affirm the district court's August 24, 2024, substitute decision and order granting the other Defendants' motions for summary judgment. The case is remanded to the district court for further proceedings consistent with this opinion and with instructions to dismiss Count V of the amended complaint based on the Hartmans' stipulation to dismissal in their opening brief and at oral argument.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.